19411

In re George W. MATHIS and Alma Kelly Mathis, Respondents, v. Tijuana D'Vastia JOHNSON, a minor, and Brenda Amelia Johnson, Appellants. Leonard JOHNSON and Drucilla K. Johnson, Appellants, v. George W. MATHIS and Alma Kelly Mathis, Respondents.

(188 S. E. (2d) 466)

322

*Messrs. Lourie & Draine,* of Columbia, *for Appellants,*

*Robert F. Fuller, Esq.,* of Columbia, *Guardian ad Litem for the Minor Appellant,*

*Harold R. Boulware, Esq.,* of Columbia, *for Respondents,*

May 4, 1972.

Moss, Chief Justice:

George W. Mathis and Alma K. Mathis, the respondents herein, commenced this action for the adoption of a minor, Tijuana D'Vastia Johnson, who along with her mother, Brenda Amelia Johnson, an appellant herein, were made parties to the action. She filed an answer and counterclaim resisting the adoption, and in lieu thereof, praying that the custody of the said minor child be awarded to her parents, Leonard Johnson and Drucilla K. Johnson. Thereafter, the parents of Brenda Amelia Johnson, and the maternal grandparents of the minor child, intervened in the action and petitioned the Court for her custody. A Guardian *ad Litem* was appointed for the minor and an answer was filed in her behalf.

The minor, Tijuana D'Vastia Johnson, was born in Columbia, South Carolina on October 15, 1967. She was the second illegitimate child of Brenda Amelia Johnson. It is undisputed that when the minor left the hospital that the parents of Brenda Amelia Johnson, and the grandparents of the minor, refused to allow the child to be brought to their home and on December 17, 1967, the custody of said child was delivered to the respondents, her great-uncle and aunt, where she has remained since.

It is the position of the mother and the grandparents that the respondents would have custody of the minor child only until the mother could get herself located and settled down. The respondents contend that they were to have permanent custody and full responsibility for the rearing and taking care of the child and at an appropriate time they would adopt the child by and with the consent of the mother.

After the commencement of this action, the question of temporary custody of the minor child was presented to the Court. The trial judge, without prejudice to the claims of the parties, left *pendente lite* custody with the respondents. He referred the case to the Standing Master for Richland County for trial.

The Master conducted hearings in the case and on October 29, 1970, filed his report, wherein he recommended that the petition for adoption be denied and that it was for the best interest of the minor that her custody be awarded to the grandparents, Leonard Johnson and Drucilla K. Johnson, appellants herein. Exceptions to the Master's Report were timely filed by the respondents, the essence thereof being that it was against the greater weight of the evidence for custody to be awarded to the grandparents.

By his Order of October 19, 1971, the Honorable Legare Bates, Judge of the Richland County Court, reversed and modified the Report of the Master to the extent that custody of the minor was granted to the respondents and the Report in other particulars was affirmed. The appellants

have prosecuted this appeal from the Order of the trial judge.

The first question for determination is whether the county court judge erred in modifying and reversing the Master's report, thereby awarding the custody of the minor child to the respondents.

We have held in numerous cases that in a custody dispute the controlling question and the dominant consideration is the welfare of the child and what is for her best interest. *Ford v. Ford,* 242 S. C. 344, 130 S. E. (2d) 916, and *Pullen v. Pullen,* 253 S. C. 123, 169 S. E. (2d) 376.

The Master found that it was for the best interest of the child that custody be awarded to the grandparents. The county judge took a different view and held that custody of the minor child should be awarded to the respondents. Since the Master and the county judge disagreed as to the custody of the child, we have the right to determine the question of child custody according to our view of the evidence. *Ex Parte Atkinson,* 238 S. C. 521, 121 S. E. (2d) 4.

It appears from the testimony that the respondents have had custody, control and possession of the minor child since shortly after her birth, now more than four years, and for the duration have actually stood *in loco parentis* to the child. The respondents have a fit and proper home for the child and are well able to care for her in every respect; this home is the only home she has ever known and the respondents are the only persons she knows as her parents. It appears that she is happy and content in the home of the respondents. The mother of the child testified that she had visited her daughter in the home of the respondents. We quote from her testimony the following:

"Q. When you went to see the Mathis family, did your child look happy?

"A. She looked happy.

"Q. Did she look content?

"A. Yes, sir.

"Q. Did Mr. and Mrs. Mathis show that they had some deep affection for your child?

"A. Yes, sir."

The mother also testified as follows:

"Q. At that time did you have any reason to believe that she was getting anything other than adequate care?

"A. No, sir."

The sincerity of the interest of the respondents cannot be considered lightly because it has been objectively demonstrated throughout the course of the child's life and her period of custody in their household. The testimony of the respondents indicates their financial ability to provide for the present and expected necessities for the child. The testimony also shows that the respondents would be able to maintain a good life for the child including proper, ethical, social, educational and religious advancement.

The mother admits that she is not financially able to provide for the needs of her child. She lives in the City of New York with her first illegitimate child and her principal means of subsistence is under a welfare program of that State.

It appears from the testimony that the grandparents of the child are prepared to accept full responsibility for her custody and care and are financially able to provide for all of her necessities. The testimony indicates that they can give her the moral, social, educational and religious considerations which would inure to her development and general welfare.

The trial judge, after reviewing all of the testimony and observing the parties personally and hearing from them in person, held as follows:

"In addition to the hearing for temporary custody, two additional hearings have been held on the Exceptions to the

Standing Master's Report by request of the Attorneys for the parties, and I have had the additional benefit of observing the parties personally, hearing from them in person, and considering additional statements as well as the arguments of various Counsel.

"This Court is not a Solomon and this is a difficult decision to make. The Court is convinced of the good intentions of both the great-aunt and uncle and of the grandparents and believes that either home would be suitable. While the mother of the child has not displayed a great deal of maturity or reliability to this point, the Court cannot overlook the possibility that she may settle down and become a proper mother in the future. In looking at the case as a whole, and with the benefit of the personal appearances of the parties without objection, this Court can only be guided by the Polar Star Rule that the main concern of this Court must be with the best interest of the child. This child is practically a stranger to the grandparents and is of very tender years, and I therefore conclude that the best interest of the child and thus of all concerned would be served by retaining custody in the great-aunt and uncle at this time."

The trial judge, after reviewing the entire record in this case and observing the parties personally and hearing from them in person, concluded to give the custody of this child to the respondents. We have given due consideration to the entire record in this case and we are satisfied with the conclusion reached by the trial judge.

It appears that the Master fixed a fee for the Guardian *ad Litem* and recommended that the appellants pay such. They allege that this was error. This question is not properly before us for decision for the reason that these appellants did not file any exceptions to the report of the Master. It was the duty of the appellants, if they conceived that the Master had erred in recommending a fee to the Guardian *ad Litem,* to except to such finding within

ten days after written notice of the filing of the report of the Master. Sections 10-1412 and 10-1511, of the Code and Circuit Court Rule 16. The conclusions of the Master not being challenged by an exception to his report, became the law of the case. *Carsten v. Wilson,* 241 S. C. 516, 129 S. E. (2d) 431.

The trial judge reversed and modified the Report of the Master to the extent that custody of the minor was granted to the respondents but "with reasonable visitation privileges vested in the mother, Brenda Amelia Johnson, and in the grandparents, Leonard Johnson and Drucilla K. Johnson, and in addition the grandparents may have custody of the child for a period of three weeks each summer, and if the parties are unable to agree upon the date of such visitation time the same will be set by the Court." The Guardian *ad Litem,* in behalf of the minor, asserts that the custody and visitation provisions established by the decree of the trial judge created a divided custody relationship adverse to the best interest of the minor.

In the recent case of *Mixson v. Mixson,* 253 S. C. 436, 171 S. E. (2d) 581, we held that the best interest and welfare of children demands that divided custody be avoided if possible, and that such will not be approved except under exceptional circumstances or for strong and convincing reasons.

In the case of *McGregor v. McGregor,* 255 S. C. 179, 177 S. E. (2d) 599, we had occasion to consider the distinction between "visitation" and "divided custody". In the cited case we quoted with approval from 24 Am. Jur. (2d), Divorce and Separation, Section 809, p. 920, as follows:

"Occasionally the courts use the term 'temporary custody' when they refer to an arrangement whereby the parent who does not have principal custody is given the right to have the child with him for a few hours, days, or weeks. Generally, however, the possession of a child for such a comparatively short period of time is regarded as a 'visitation',

while possession for a period of time such as a month or two, or during the summer months, is termed 'divided custody.' "

In the *McGregor* case we held that the question of determining and limiting visitation rights is one addressed to the broad discretion of the trial judge and in the absence of a clear abuse of such, the Order granting, denying or limiting visitation rights will not be disturbed. The record here is devoid of any evidence that the grandparents of the minor child are not fit, proper and suitable persons to have the care and control of the infant child during her visit with them for a period of three weeks each summer. The fact that the trial judge permits the child to visit in the home of her grandparents for the three weeks period specified in his Order must be regarded as visitation rather than divided custody. We point out in this connection that neither the respondents nor the appellants, other than the Guardian *ad Litem,* has made any objection to the visitation period provided for in the Order of the trial judge. We find no error on the part of the trial judge in fixing the visitation rights of the minor child.

The exceptions of the appellants are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD, and LITTLEJOHN, JJ., concur.