1244

Walter C. BROWN, Betty T. Brown, and Greg C. Brown, Respondents v. Sandra Brown EARNHARDT, Appellant.

(374 S. E. (2d) 513)

Court of Appeals

*Richard H. Rhodes*, Spartanburg, *for appellant.*

*Roger L. Couch,* Spartanburg, *for respondents.*

Heard Oct. 12, 1988.

Decided Nov. 14, 1988.

GOOLSBY, Judge:

Sandra Brown Earnhardt, the mother of Holly Brown, a four-year old child, appeals the order of the family court that awards visitation rights to the respondents Walter C. Brown and Betty T. Brown, the child's paternal grandparents. We affirm.

When the mother and the grandparents' son, Greg C. Brown, were divorced in 1984, the family court placed the child in the mother's custody and awarded the father fixed visitation rights. From the time of the mother's and father's divorce until shortly before the institution of this action on February 26, 1987, the mother voluntarily allowed the grandparents to have visitation with their granddaughter in their home every other Thursday evening. After the mother discontinued this routine, the father and the grandparents brought this action seeking visitation rights for the grandparents.

The family court granted the grandparents visitation rights apart from those of the father, finding visitation with her grandparents in the child's best interest. By its order, the grandparents are granted visitation for a twenty-hour period once a month, beginning at 6:00 p.m. on Friday and ending at 2:00 p.m. on Saturday.

Section 20-7-420(33) of the South Carolina Code of Laws (1976), gives the family court exclusive jurisdiction "[t]o order periods of visitation for the grandparents of the child." The statute, however, does not detail the circumstances in which grandparental visitation may be ordered.

The mother's principal argument against the grandparental visitation ordered in this instance is that Section 20-7-420(33) should be interpreted to allow grandparental visitation only when the visitation rights of the parent through whom the grandparents are related to the grandchild have been absolutely precluded for some reason, such as death. *See* Note, *Visitation Rights of Natural Grandparents,* 38 S.C.L.REV. 120 (1986) (comment on visitation

rights of natural grandparents). Here, the mother points out, the grandparents have access to their granddaughter through their son who lives nearby.

We can find no basis for according the statute the narrow interpretation urged by the mother. Nothing either in the South Carolina Children's Code [CODE OF LAWS OF SOUTH CAROLINA §§ 20-7-10 *et seq.* (1976)] or in the South Carolina case law suggests that the family court lacks jurisdiction to order grandparental visitation where the grandparents have access to the grandchild through the noncustodial parent.

Our Supreme Court has had only one occasion to interpret Section 20-7-420(33). In *Chavis v. Witt*, 285 S. C. 77, 328 S. E. (2d) 74 (1985), the paternal grandparents sought visitation with their granddaughter after the death of the granddaughter's natural father, their son. The mother had remarried and granddaughter had been adopted by the mother's new husband. The Supreme Court affirmed the family court's grant of visitation rights to the grandparents, holding that the family court did not abuse its discretion in finding that the best interests of the granddaughter would be served by allowing her to visit with her grandparents.

While it is true that in *Chavis* the parent through whom the grandparents were related to the grandchild was deceased, we do not read *Chavis* as holding that grandparental visitation may be ordered only when that or some other circumstance absolutely precluding visitation by the noncustodial parent is present. *See* Note, *Visitation Rights of Natural Grandparents*, 38 S.C.L.REV. 120, 122 (1986) ("*Chavis* is significant because it reflects a judicial willingness, at least in certain cases, to recognize grandparental rights that are not dependent on the status of a child's parent."). Rather, we read *Chavis* as holding that the question of whether to award grandparents visitation rights is a question committed to the family court's sound discretion and is to be determined by the child's best interest. *See Mathis v. Johnson*, 258 S. C. 321, 188 S. E. (2d) 466 (1972) (an adoption case predating Section 20-7-420(33) wherein the Supreme Court affirmed an order of the trial court granting maternal grandparents visitation rights with their grandchild, notwithstanding that their daughter, the

natural mother, was not deceased and was also awarded visitation rights); *see generally* Annot., 90 A.L.R. (3d) 222 (1979) (collecting and analyzing cases dealing with grandparental visitation rights).

In the instant case, the record reflects that the paternal grandparents have maintained from their granddaughter's birth a close and loving relationship with her and have regularly enjoyed from the time of her parent's divorce separate visitation with their granddaughter. It would now be unfair to the child not to have this special relationship continue, particularly since, as the family court's order indicates, the grandparents provide a stabilizing influence in their granddaughter's life amidst the hostility presently existing between the mother and father.

We cannot say, then, that the family court abused its discretion in awarding the grandparents visitation rights with their granddaughter. *Cf. Looper v. McManus*, 581 P. (2d) 487 (Okla. Ct. App. 1978) (wherein the court found that arranging for the child to visit periodically with the child's paternal grandparents contributed in a positive way to the child's mental health and well-being where the grandparents had emotional connection with the child).

In our view, the allowance of grandparental visitation rights where such visitation is in the grandchild's best interests is a way of recognizing the value of kinship. Ingulli, *Grandparent Visitation Rights: Social Policies and Legal Rights*, 87 W. VA. L. REV. 295, 305 (1985). And few would argue with these observations by the Supreme Court of New Jersey regarding most grandparents and the role that they ordinarily play in a child's life:

> Grandparents ... are not authority figures and do not possessively assert exclusive rights to make parental decisions. At best, they are generous sources of unconditional love and acceptance. ...
>
> ....
>
> It is a biological fact that grandparents are bound to their grandchildren by the unbreakable links of heredity. It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. ... Visits with a grandparent are often

a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship.

*Mimkon v. Ford,* 66 N. J. 426, 437, 332 A. (2d) 199, 204 (1975).

We see no merit to the mother's remaining argument that, when the father's visitation rights are also considered, the award of grandparental visitation in this instance creates a divided custody relationship. *See Mixson v. Mixson,* 253 S. C. 436, 171 S. E. (2d) 581 (1969) (divided custody must be avoided if possible and will not be approved except under exceptional circumstances). The visitation rights awarded the grandparents here stand on their own and should be viewed separately from those awarded the father.

In reaching this result, we are not unmindful of the mother's concern regarding the child's increasing involvement in school- and church-related activities. At some point in the future, the child's best interest may require a reexamination of and an adjustment to the present visitation schedule.

But for now, the award of separate visitation rights to the paternal grandparents is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.