1748

Linda Robinson WHEELER, Appellant v. Gregory Alan GILL, Respondent.
(413 S.E. (2d) 860)

Court of Appeals

*David H. Wilkins* and *Timothy E. Madden,* both of *Wilkins & Nelson, P.A.,* Greenville, *for appellant.*

*Kathleen P. Jennings,* Greenville, *for respondent.*

*Weyman H. Dodson, Jr.,* of *Dodson & Dodson,* Greenville, *Guardian ad Litem.*

Heard Nov. 12, 1991.

Decided Jan. 6, 1992.

CURETON, Judge:

The primary issue involved in this appeal is the propriety of the award of sole custody of the parties' daughter to the Respondent (father). The Appellant (mother) appeals. We affirm as modified.

The parties were married in 1981 and divorced in 1988. Pursuant to a court approved agreement, custody of their daughter, Lindsey, born in March 1986, was jointly awarded to both of them. The custody order provided for review of the custody arrangement in one year. In September 1989, the mother petitioned the court to review the order asserting its unworkability and requesting she be awarded sole custody. The father counterclaimed for sole custody. Both parties sought attorney fees and other related relief. The parties stipulated that only the circumstances occurring subsequent to the divorce decree would be considered by the court in making its decision. Following a one-day hearing, the trial court awarded sole custody to the father, denied attorney fees to both parties and provided for the mother's visitation with Lindsey.

In challenging the custody award, the mother argues the trial court (1) ignored the tender years doctrine; (2) failed to accurately weigh the personal characteristics and circumstances of the parties; (3) failed to thoroughly and independently examine all of the evidence; (4) erred in considering events which occurred before the issuance of the divorce decree; (5) failed to consider the mother as the primary caretaker parent; (6) erred in placing certain limitations on her visitation; and (7) erred in admitting certain hearsay statements. The mother also conditionally argues that in the event this court should reverse the trial court, she should be awarded child support and attorney fees.

The mother testified she is thirty-five years old, has a college education, and works as a property manager in charge of three office buildings. She works from 8:00 a.m. to 5:00 p.m., but has flexible hours which permits her to eat lunch with Lindsey at the day care center and do volunteer work there.

She has worked at three jobs since the divorce. Although the divorce was granted to the father based on adultery, she has now married her paramour, Larry Wheeler. Lindsey has a good relationship with Mr. Wheeler. The mother's parents live in Highlands, North Carolina, and come to see the child about once a week. The mother lives in a two-bedroom, two bath apartment containing approximately 1200 square feet located in a family complex. She also testified she and Lindsey are very close and she plans family activities around Lindsey and involves her in children's theater, church, and other activities. She further testified she, Larry, and Lindsey have attended extensive family counseling.

The mother's witnesses testified to her good parenting skills, Lindsey's happiness while in the mother's care, and the bond between Lindsey and her mother. Her psychologists testified to the bonding between Lindsey and her mother and the emotional stability of the mother. They also testified to the emotional stability of Mr. Wheeler.

The father testified he is thirty-one years of age and works at a plumbing and heating supply place. He has been employed there since 1982. He owns and lives in the former marital residence, having purchased the mother's interest after the divorce. The home has approximately 1200 square feet, two bedrooms, a bath and a large fenced yard. Both he and Lindsey are the outdoors type and they do lots of things together. He recently purchased a puppy for her. He also has close family connections. He and his parents attend the same church and he and his family are very active in the church. He plans everything around the child. Both he and Lindsey have participated in extensive family counseling. He works from 7:30 to 5:00 and has little job flexibility, but could leave work in an emergency. He has diabetes, but it is under control.

The father's psychotherapist testified she has assisted him with developing parenting skills. The father and Lindsey are closely bonded. He has a commitment to the child and the ability to predict her feelings. It was her opinion that the father was the emotional and psychological parent of Lindsey and to award custody to the mother would do great emotional harm to Lindsey. She stated the father has great emotional resources and good parenting skills. The father's other wit-

nesses confirmed the closeness of his relationship to Lindsey, his parenting skills, his deep religious beliefs, and his extended family support resources.

We are unable to locate a case decided by an appellate court in this State outlining the criteria to be used where custody is changed from joint to sole custody. Of paramount significance here, however, is the fact the divorce court ordered a review of the operation of the joint custody arrangement in one year. Under the terms of such an order, neither party would be required to show a change of circumstances to support a request for review of the custody order. Indeed, either or both parties may show the workability or the unworkability of the joint custody arrangement. The party or parties claiming the arrangement is unworkable must support his/her claim for sole custody with evidence he/she is best fit to have custody. The court must then determine first if the joint custody arrangement should be terminated, and if so which party is best fit to have custody. Such a determination would ordinarily be made in the same manner an initial custody decision is made.

Here both parties conceded during the hearing joint custody was not in the best interest of Lindsey. Indeed, neither party appeals from the trial court's decision to terminate the joint custody arrangement. Thus, the only custody issue is whether the father was best fit to have custody of Lindsey.

The mother's arguments that the court ignored the tender years doctrine, failed to evaluate the personal characteristics and circumstances of the parties, and failed to consider the fact the mother was the primary caretaker for the child all address the argument that the trial court erred in holding the child's best interest would be served by awarding custody to the father.

The trial court based its decision on award custody to the father, *inter alia*, on the following factual considerations:

1. The father has continued his same employment since 1982, while the mother has changed employment several times.
2. The father has maintained the former marital home where Lindsey was born and raised and which provides the stability of a home which she was known throughout her life.

3. The father has "an apparent loving extended family" and attended support resources that go along with such a family. The court found, however, that the maternal grandparents also "love and care for the child."
4. The father had a firmer commitment to "a strong value system and to the instilling of good morals in [Lindsey]."
5. Lindsey thrived on outdoor activities, and the father was "especially attentive to this."
6. The father would provide for Lindsey a more stable and consistent home environment.

The mother argues on appeal principally that because both parties are fit, and she has been the primary caretaker for Lindsey, the tender years doctrine demands custody should have been awarded to her. She asserts the trial court did not even consider the doctrine in awarding custody to the father. She buttressed this argument on the fact the custody order does not specifically indicate the court considered the doctrine.

The health, age, and sex of a child, often referred as the tender years doctrine, are factors to be considered in awarding custody of a young child. *Ford v. Ford*, 242 S.C. 344, 130 S.E. (2d) 916 (1963). However, the doctrine creates no presumption as to which parent is entitled to custody. *Marshall v. Marshall*, 282 S.C. 534, 320 S.E. (2d) 44 (Ct. App. 1984). The cases are legion that the controlling consideration in making a custody award is the welfare and best interest of the child. *Id.* at 540, 320 S.E. (2d) at 48. The trial court's order states "I have considered the psychological, physical, environmental, spiritual, educational, medical, family, emotional and recreational aspects of the child's life." This listing of factors in conjunction with other discussions in the order convinces us the court did consider the child's health, age, and sex in awarding custody. As to the primary caretaker argument, we note that from the time joint custody was awarded in September 1988, the father has had either joint or sole custody of Lindsey.

In making custody decisions "the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." *Davenport v.*

*Davenport*, 265 S.C. 524, 527, 220 S.E. (2d) 228, 230 (1975). Admittedly, the question of which parent is more fit to have custody of Lindsey is a close one. We are convinced she is loved by both parents and would have been well cared for by the mother had custody been awarded to her. The tender years doctrine has evolved over the years to the point that its present utility is most apparent in those cases where parents are found to be equally fit and the doctrine is applied as a tie breaker determinant. We are not convinced the parties' fitnesses were so equal that application of the doctrine mandated award of custody to the mother. The trial judge who heard the testimony and based his decision, at least in part, on the credibility of the witnesses determined the father's home offered the best environment for Lindsey. We cannot say he abused his discretion.

■ The mother next argues the trial court began the custody hearing prejudiced against her. The judge stated at the commencement of the hearing that this was a "child abuse case of one Lindsey Erin Gill." It is clear from the record the trial judge entered the hearing with a decided aversion for joint custody and with the determination that joint custody would not continue in this case. This was improper and is not condoned by this court. However, we fail to see how the mother is prejudiced since she, more than anyone else, advocated a termination of the joint custody arrangement. Moreover, we view the judge's initial comments as simply an expression of his distaste for joint custody and not a suggestion that either parent had abused Lindsey.

■ The mother next contends that because the trial judge ruled immediately following the one-day hearing, he did not give proper consideration to all of the evidence. The record does not contain complicated documentary evidence that required study, nor is there involved complicated issues of law. Certainly, the evidence was fresh in the judge's mind. We find no abuse of discretion. Additionally, we note the mother made a motion to reconsider pursuant to Rule 59(e) at which time the judge had ample opportunity to reconsider the custody issue.

■ The mother next asserts reversible error because the trial judge considered events which occurred prior to the divorce decree. By stipulation, the parties agreed the

court would limit its consideration to circumstances occurring subsequent to the issuance of the divorce decree. In his order, the trial judge stated the father received a divorce from the mother based on her adulterous conduct with her present husband. He further stated the prior order prohibited Mr. Wheeler from being alone with Lindsey unless he was married to the mother. We view this statement as reciting historical facts only. There is no indication the judge denied the mother custody based in whole or part on these facts. The morality of a parent is relevant only to the extent it adversely affects the child. *Stroman v. Williams*, 291 S.C. 376, 353 S.E. (2d) 704 (Ct. App. 1987). We agree with the mother the record contains no indication of immorality on her part since the divorce decree was entered. However, the trial court may have mentioned the latter fact to explain that the quick marriage between the mother and Mr. Wheeler does not necessarily equate to a stable two-parent family as claimed by the mother.

■   The mother next claims the trial court erred in prohibiting her from making unauthorized visits to Lindsey's day care center. There was testimony her visits were not welcomed by the father and had the potential for disruption. The final amended order on this issue prohibits the mother from visiting Lindsey at the day care, except when invited, when "volunteers are allowed to participate in activities with a class," or on special occasions "when parents are normally allowed to attend." We do not view these prohibitions as overly oppressive and find support in the record for the restrictions. However, to the extent the restrictions prohibit the mother from responding to a genuine emergency at the day care center when the father is otherwise unavailable, we accordingly modify the trial court's order.

■   There is no merit to the wife's contention that South Carolina law prohibited the placing of such restrictions on the mother because the father did not request that relief in his pleadings. Of course, the prohibitions were simply a term of the visitation order which the court was requested to establish in the event it awarded sole custody to the father.

■   The mother also argues the trial court's admission of the day care center's newsletter was error. The newsletter quoted Lindsey's response to a question asked her

what she was thankful for at Thanksgiving. Her response was "daddy." Hearsay consists of out of court statements offered in evidence to prove the truth of the matter asserted. *S.C. Dep't of Social Servs. v. Doe*, 292 S.C. 211, 355 S.E. (2d) 543 (Ct. App. 1987). We agree with the mother the newsletter was hearsay. We hold, however, its admission does not require reversal in light of other extensive evidence of the close bond between Lindsey and her father. The newsletter article was therefore merely cumulative. *Ward v. Epting*, 290 S.C. 547, 351 S.E. (2d) 867 (Ct. App. 1986).

Finally, the mother's contention that she should have been awarded child support and attorney fees is moot in light of our disposition of the custody issue.

Accordingly, we affirm the order of the trial court except to the extent the mother's visitation at the day care center is modified.

Affirmed as modified.

SHAW and BELL, JJ., concur.