503 S.E.2d 757

**Laura D. POUNTAIN, Respondent,**

v.

**James H. POUNTAIN, Jr., Appellant.**

**No. 2849.**

Court of Appeals of South Carolina.

Submitted May 5, 1998.

Decided June 8, 1998.

John Michael Turner, of Culbertson, Whitesides, Turner & Able, Laurens, for appellant.

Julius B. Aiken, Greenville, for respondent.

CURETON, Judge:

In this child custody case, James Pountain (the father) appeals from an order of the family court granting Laura Pountain (the mother) sole custody of the parties' minor child based on a change of circumstances. We affirm.[1]

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

## PROCEDURAL HISTORY:

The parties married in March 1989 and their only child was born in October 1989. In 1991, the mother brought an action against the father and obtained an order for separate support and maintenance. At that time, the family court adopted the parties' agreement regarding custody of their child. Pursuant to the agreement, the parties were awarded joint custody with physical custody being granted to the maternal grandmother. The agreement further provided that both parents would have reasonable visitation privileges.

During the time that the maternal grandmother retained physical custody of the child, both the mother and the father regularly exercised their visitation rights. In June 1995, the grandmother requested the father keep the child "for awhile," and the child remained with him for two or three weeks. The grandmother retrieved the child on June 29, 1995. Thereafter, the child has resided with the mother who commenced the instant action for change of custody on July 11, 1995. The father answered and counterclaimed, also seeking custody of the child.

A temporary hearing was held on September 11, 1995. This hearing resulted in an order awarding the mother temporary custody of the child with liberal visitation to the father. At the final hearing in November 1996, the family court awarded custody of the child to the mother with liberal visitation for the father. This appeal followed.

## FACTS:

At trial, the mother testified her circumstances have changed in several respects since the time of the joint custody order. The mother remarried in July 1995, and she and her current husband live in a three bedroom home located in a subdivision. The child has his own bedroom in the home. Although her husband testified he is financially able to provide for the mother and the child, the mother is employed part-time as a bookkeeper. The mother testified she is able to arrange her work schedule around the child's school schedule. The mother, who professed to be a Christian, pays for the child to attend a private Christian school.

It is uncontested that the child suffered a broken arm when he fell from a swing while under the supervision of the

mother's husband. The child was immediately taken to the hospital, where he was fitted with a cast. However, the mother admitted she missed two of the child's follow-up medical appointments. When questioned about why she missed the follow-up appointments, the mother explained that her car broke down on both occasions.

The mother also admitted that she has written several "bad checks," but attested that she has since "taken care" of them. Regarding the fraudulent check charges that were pending at the time of the trial of this case, the mother testified she had not seen the checks, and she believed they were written in 1994 by an unknown third party from a checkbook that was stolen from her then. The mother further stated that in any event, her husband had taken over management of the family finances.

The father testified his circumstances have also greatly improved since the time of the joint custody order. He remarried in February 1995. He and his wife live in a two bedroom mobile home in Laurens County. The child has his own bedroom. At the time of trial, the father had been gainfully employed at a fabric company for five years. The father's wife is employed at a boy's home in Clinton, South Carolina.

Although the father is agnostic, he testified he would not teach his child to be agnostic and in fact would "make sure that [the child] would go to church on Sunday." The father's wife, who is not agnostic, testified that although she had never taken the child to church, she is willing to do so.

The guardian ad litem opined that this case is a "really tough call." According to the guardian, the child dearly loves both parents and their spouses. The guardian was of the opinion that both parents are fit and both stepparents are "extraordinary people." The guardian expressed concerns, however, about both the mother and the father. Regarding the mother, the guardian stated he was concerned about the mother's history of writing fraudulent checks. Also, the guardian was not satisfied with the mother's explanation as to why she failed to take the child to his doctor appointments after he broke his arm. Finally, the guardian questioned the sincerity of the mother's religious convictions. As to the

father, the guardian stated his "questions about [the father] deal mostly with the fact that he is an agnostic." The guardian's concerns in this regard related to the impact of removing the child from the environment with the maternal grandmother who took the child to church "nearly every time the door opened" to an entirely different environment. Ultimately, however, the guardian recommended that custody be placed with the father because the father had a better value system.

## DISCUSSION:

 On appeal, the father argues the family court erred in failing to award him custody. Specifically, the father asserts the court erred in (1) determining that the best interests of the child warranted awarding custody to the mother, (2) granting prejudicial effect to the temporary order, (3) failing to give adequate consideration to the recommendation of the guardian ad litem, and (4) placing undue weight upon the parties' religious beliefs.

On appeal from the family court, this court has jurisdiction to correct errors of law and find facts in accordance with our own view of the preponderance of the evidence. *Epperly v. Epperly,* 312 S.C. 411, 440 S.E.2d 884 (1994); *Chester County Dep't of Social Services v. Coleman,* 303 S.C. 226, 399 S.E.2d 773 (1990). We are not, however, required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E.2d 541 (1981). Further, this broad scope of review does not relieve the appellant of the burden of convincing this court that the family court committed error. *Skinner v. King,* 272 S.C. 520, 252 S.E.2d 891 (1979). Because this court is not afforded the opportunity for direct observation of the witnesses, we must accord great deference to the trial court's findings where matters of credibility are involved. *See Aiken County Dep't of Social Services v. Wilcox,* 304 S.C. 90, 403 S.E.2d 142 (Ct.App.1991). This is especially true in cases involving the welfare and best interests of children. *Id.*

 In all child custody controversies, the welfare and best interests of the children are the primary, paramount, and controlling considerations of the court. *Cook v. Cobb,* 271 S.C.

136, 245 S.E.2d 612 (1978). The family court must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child. *Epperly v. Epperly,* 312 S.C. 411, 440 S.E.2d 884 (1994). As well, psychological, physical, environmental, spiritual, educational, medical, family, emotional and recreational aspects of the child's life should be considered. *Wheeler v. Gill,* 307 S.C. 94, 413 S.E.2d 860 (Ct.App.1992). In deciding to whom custody should be awarded, the family court should weigh all the conflicting rules and presumptions together with all of the circumstances of the particular case, and all relevant factors must be taken into consideration. *Woodall v. Woodall,* 322 S.C. 7, 471 S.E.2d 154 (1996); *Ford v. Ford,* 242 S.C. 344, 130 S.E.2d 916 (1963). Indeed, in making custody decisions, "the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." *Wheeler v. Gill,* 307 S.C. 94, 99, 413 S.E.2d 860, 863 (Ct.App.1992) (quoting *Davenport v. Davenport,* 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975)).

In order for a court to grant a change of custody, the party seeking the change must meet the burden of showing changed circumstances occurring subsequent to the entry of the order in question. *Baer v. Baer,* 282 S.C. 362, 318 S.E.2d 582 (Ct.App.1984). "[A] change in circumstances justifying a change in the custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the [child] will be served by the change." *Thompson v. Brunson,* 283 S.C. 221, 227, 321 S.E.2d 622, 626 (Ct.App.1984) (quoting *Skinner v. King,* 272 S.C. 520, 523, 252 S.E.2d 891, 892–93 (1979)). Custody decisions are matters left largely to the discretion of the trial court. *Stroman v. Williams,* 291 S.C. 376, 353 S.E.2d 704 (Ct.App.1987).

While we agree with the guardian that this is indeed a close case, we find no abuse of discretion in the family court's decision to award custody of the child to the mother. In support of its decision, the family court noted the mother taught the child to brush his teeth, comb his hair, and potty trained him at the appropriate age. It found the mother also regularly reads to the child and plays games with him. Importantly, the mother is able to arrange her work schedule around the child's school schedule and has continued to expose

the child to the same religious influences the child became accustomed to while in the care of the grandmother. Finally, the grant of custody to the mother serves the end of allowing the child to remain in the environment with which he has become familiar since the entry of the temporary order.

We decline to second-guess the family court's fitness determination. Although we are concerned with the mother's check writing habits, in any event, both the mother and her husband testified the husband has now taken over management of their checkbook. Further, we note, as did the family court, that the mother has voluntarily taken a parenting skills class. While we share in the guardian ad litem's concern that the mother was unable to take the child to his follow-up doctor's appointments, there is no indication in the record that the mother was being less than candid in testifying that her failure in this regard was due to car trouble. *See Woodall v. Woodall,* 322 S.C. 7, 471 S.E.2d 154 (1996) (the appellate court should be reluctant to substitute its own evaluation of the evidence on child custody for that of the trial court).

We find no merit in the father's contention that the mother's marriage to her new husband is a "marriage of convenience" which is "destined to fail." There is simply no evidence in the record, other than the proximity of the events themselves, to support the father's claims in this regard. Indeed, the guardian ad litem characterized both the mother's new husband and the father's new wife as "extraordinary" people. In our view, the mother's remarriage is a factor properly considered in favor of granting her custody of the child. *See Fisher v. Miller,* 288 S.C. 576, 344 S.E.2d 149 (1986) (remarriage is a circumstance which when considered with other change of circumstances, may warrant a change of custody); *Barrett v. Barrett,* 261 S.C. 111, 198 S.E.2d 532 (1973) (remarriage is normally relevant to show improved circumstances on the part of a remarried parent seeking to obtain custody).

Additionally, we find no merit to the father's contention the family court gave prejudicial effect to the temporary custody order. Although the family court did expressly consider the fact that the child has been in the mother's custody since the time of the temporary order, we find the child's sense of

security and stability are proper considerations in determining the child's best interest.

■ We further disagree with the father's contention that the family court failed to give adequate consideration to the recommendations of the guardian ad litem. The role of the guardian ad litem in making custody recommendations is to aid, not direct, the court. Ultimately, the custody decision lies with the trial judge. *See Shainwald v. Shainwald,* 302 S.C. 453, 395 S.E.2d 441 (Ct.App.1990) (the guardian ad litem does not usurp the judge's function). Here, the family court considered but rejected the guardian's recommendation. Under the facts of this case, where the guardian was of the opinion that "this is not a clear case by any means," we find no abuse of discretion in the court's decision not to adopt the guardian's recommendation.

■ Finally, we find no merit in the father's argument that the family court placed undue weight upon the parties' religious beliefs. Although the religious beliefs of parents are not dispositive in a child custody dispute, they are a factor relevant to determining the best interest of a child. *See e.g., Driggers v. Hayes,* 264 S.C. 69, 212 S.E.2d 579 (1975) (grandparents who had provided an orderly home where child had received love and religious training permitted to retain custody); *Mathis v. Johnson,* 258 S.C. 321, 188 S.E.2d 466 (1972) ("religious advancement" of child was a consideration in custody award); *Shainwald v. Shainwald,* 302 S.C. 453, 395 S.E.2d 441 (Ct.App.1990) (father's "interest in the education and religious training of children" was a factor in awarding custody to father). Our reading of the family court's order in this case does not convince us that the family court gave too much weight to the "protestations of religious faith on the part of the [wife]" *Id.* at 460, 395 S.E.2d 441. Rather, the court properly considered the wife's professed religious beliefs as those beliefs relate to the advancement of the child's sense of stability and well-being.

For the foregoing reasons, the decision of the family court is **AFFIRMED.**

HOWELL, C.J., and GOOLSBY, J., concur.