THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Oscar Franklin DuBose, Jr.,       
Respondent,
 
 
 

v.

 
 
 
Kathy Sarnowski, f/k/a Kathy D. DuBose,       
Appellant.
 
 
 

Appeal From Lexington County
Donna S. Strom, Family Court Judge

Unpublished Opinion No. 2004-UP-078
Heard November 4, 2003  Filed February 
 12, 2004

AFFIRMED 

 
 
 
Jean Perrin Derrick, of Lexington, for Appellant.
Carolyn B. Steigner and Daun C. Steigner, both of Lexington, 
 for Respondent.
 
 
 

 PER CURIAM: In this domestic case, 
 Frank DuBose (Father) sued Kathy Sarnowski (Mother), seeking a change of 
 custody following Mothers move with her new husband to Kentucky.  The family 
 court found a change of circumstances occurred and granted a change of custody 
 to Father.  Additionally, the family court granted Fathers request for attorneys 
 fees.  Mother appeals, arguing the family court erred by:  1) finding a change 
 of circumstances occurred based solely upon Mothers move from South Carolina 
 to Kentucky; 2) excluding evidence of the childrens custody preference; 3) 
 excluding evidence of Fathers past violent acts; 4) awarding Father attorneys 
 fees; and 5) refusing to award Mother attorneys fees.   We affirm.  
FACTUAL/PROCEDURAL BACKGROUND
Father and Mother were divorced in 2000, and pursuant to 
 an agreement later incorporated into a divorce decree, Mother was granted sole 
 custody of the children.  The divorce decree also provided that if Mother intended 
 to move out of the state with the children, she could only do so after giving 
 Father seventy-five days notice.  
On March 3, 2000, Mother gave Father written notice of her 
 intent to move out of the state with the children.  However, she did not provide 
 Father with information as to where she was moving.  On May 18 or 19, 2000, 
 Mother left South Carolina with the intention of permanently moving to Kentucky 
 with her new husband.  
Father filed a summons and complaint seeking custody of the 
 children, and following a hearing at which Mother did not appear, the family 
 court awarded Father temporary custody.  
At the final hearing, the family court found that a substantial 
 change of circumstances occurred, and the best interests of the children would 
 be served by awarding custody to Father.  Additionally, the court awarded Father 
 attorneys fees.  Mother appeals.
STANDARD OF REVIEW
On appeal from an order of the family court, this 
 court has jurisdiction to find facts in accordance with its own view of the 
 preponderance of the evidence.  Hopkins v. Hopkins, 343 S.C. 301, 304, 
 540 S.E.2d 454, 456 (2000).  However, this broad scope of review does not require 
 this Court to disregard the findings of the family court.  Greene v. Greene, 
 351 S.C. 329, 335, 569 S.E.2d 393, 397 (Ct. App. 2002).   Rather, because this 
 Court lacks the opportunity for direct observation of witnesses, it should give 
 great deference to the family courts findings where matters of credibility 
 are involved, especially in cases involving the welfare and best interests of 
 children.  Kisling v. Allison, 343 S.C. 674, 677-78, 541 S.E.2d 273, 
 275 (Ct. App. 2001).  
LAW/ANALYSIS
 I.     Change of Circumstances 
 
 Mother argues the family court erred 
 by ruling her relocation to Kentucky, standing alone, constituted a change of 
 circumstances sufficient to alter the custody award.  
Appellate courts should interpret judgments by 
 the trial courts as they would any other instrument.  Eddins v. Eddins, 
 304 S.C. 133, 135-36, 403 S.E.2d 164, 166 (Ct. App. 1991); see also State 
 v. Evans, 354 S.C. 579, 584, 582 S.E.2d 407, 410 (2003) (holding an appellate 
 court must view the circuit courts statements as a whole to determine its reasoning).  

The family courts order states in pertinent part: 

I find that the move to Kentucky is not beneficial to the 
 children; that their lives would not be enhanced by the move; that their relationship 
 with their father was very good prior to the move and would suffer; and that 
 the mothers reasons for moving were very poor . . . . This Court finds that 
 the mothers move to Kentucky and subsequent behavior constitutes 
 a substantial change in circumstances which necessitates a change in permanent 
 custody to the father. 

(emphasis added).  Additionally, the family courts 
 numerous findings of fact and conclusions of law support the conclusion the 
 decision is based on many factors, only one of which was Mothers move to Kentucky.  
 Thus, Mothers claim that the family court found a change of circumstances and 
 altered the custody award based solely on her move to Kentucky is without merit.
Furthermore, based on our own review of the record 
 and considering the totality of the circumstances, we hold the family court 
 did not err by altering the custody award and awarding custody to Father. 
In South Carolina, there is a presumption against 
 removing a child from the state.  McAlister v. Patterson, 278 S.C. 481, 
 483, 299 S.E.2d 322, 323 (1982).  However, the presumption may be rebutted by 
 a showing the move will benefit the child. See id. at 483, 299 
 S.E.2d at 323 (In situations where removal will benefit the child, removal 
 has been allowed.). Thus, the question of whether relocation will be allowed 
 requires a determination of whether relocation is in the best interest of the 
 children.  Rice v. Rice, 335 S.C. 449, 454, 517 S.E.2d 220, 222 (Ct. 
 App. 1999).  In child custody cases, a court must examine the totality of the 
 circumstances to determine the best interests of the child.  Wheeler v. Gill, 
 307 S.C. 94, 99, 413 S.E.2d 860, 863 (Ct. App. 1992).
In reaching a determination as to custody, the 
 family court should consider how the custody decision will impact all areas 
 of the childs life, including physical, psychological, spiritual, educational, 
 familial, emotional, and recreational aspects.  Pountain v. Pountain, 
 332 S.C. 130, 136, 503 S.E.2d 757, 760 (Ct. App. 1998). Additionally, the court 
 must assess each partys character, fitness, and attitude as they affect the 
 child.  Id. at 136, 503 S.E.2d at 760.  
Father resides in South Carolina, with his relatives living 
 nearby, in a town where the children have gone to school their whole lives.  
 The record indicates Father works full-time, and thus, when the children are 
 in Fathers custody, his mother watches the children and cooks for them on a 
 regular basis.  Notwithstanding that, the Guardian ad Litem (GAL) testified 
 it was in the childrens best interest to stay in South Carolina where they 
 have gone to school and have relatives nearby.  
Additionally, the GAL testified the children are bonded with 
 their Father.  Therefore, allowing Mother to retain custody in Kentucky would 
 have a negative impact on Fathers relationship with the children.  
Evidence within the record indicates during Mother and Fathers 
 marriage, Father had physical confrontations with both Mother and Randall, Mothers 
 son by a previous marriage.  However, the evidence also indicates the confrontations 
 with Mother have not occurred since the end of their marriage, and the confrontations 
 with Randall have not occurred since 1991.  
On Mothers side, the record indicates during the summer 
 of 2000, Mother, her new husband, several pets, and the children lived in a 
 hotel room in Kentucky.  Subsequently, Mother, her new husband, and the children 
 moved into a farmhouse.  
The record indicates Mother is unemployed, and although she 
 claims to have a disability, she did not provide evidence in the record to support 
 her claim.  
While the children are with Mother, Mother primarily cares 
 for the childrens needs.  Additionally, testimony within the record indicates 
 Mother is more patient and understanding of the children, communicates better 
 with them, and is more involved in their lives than Father.  
However, we are concerned with Mothers ability to provide 
 a safe, stable environment for the children.  Initially, we are most concerned 
 with evidence indicating Mothers new husband is violent.  The evidence in this 
 regard indicates that shortly after moving to Kentucky, Mothers new husband 
 attacked her with a hammer.  Mother called the police, and Mothers new husband 
 was charged with criminal domestic violence.  
Additionally, the record indicates patterns of instability.  
 First, this is Mothers third marriage, and Mother only met her new husband 
 a short period of time before they were married.  Second, Mother was held in 
 contempt of court for damaging Fathers property.  Third, the day Mother left 
 with the children to Kentucky, it was Fathers regularly scheduled visitation 
 period.  Although Mother sent a letter to Father indicating she was moving, 
 Mother, in violation of the divorce decree, failed to give proper notice to 
 Father and failed to tell Father where the children would be.  
Subsequently, when the family court granted temporary custody 
 to Father, Mother did not voluntarily comply with the order.  Rather, Father 
 had to travel to Kentucky to enforce the order.  Furthermore, when Father took 
 the children, Mother cried, screamed, and threatened Father in front of the 
 children.  Mother admitted that after this confrontation, she encouraged the 
 children to perform poorly in school so that her chances of retaining permanent 
 custody would improve.  The children did in fact perform poorly in school, requiring 
 one of them to take summer school classes.  
Considering the totality of the circumstances, we conclude 
 Father is more capable of providing a stable environment for the children.  
 A fair reading of the record indicates while Fathers mother tends to many of 
 the childrens basic needs, Father does involve himself in his childrens lives.  
 Furthermore, Father has a strong familial support system.  We are concerned 
 with evidence indicating a history of violent arguments with Mother and Randall.  
 The family court noted this history in its order, but ultimately concluded Father 
 was still the best parent to have custody.  In evaluating the significance of 
 this prior history, the family court contrasted, as do we, the evidence within 
 the record indicating Mother recently accused her current husband of assaulting 
 her with a hammer.  Additionally, Mother has demonstrated behavior that indicates 
 she prioritizes her own interests over the best interests of her children.  

We therefore agree with the family courts conclusion that 
 the best interests of the children are served by granting Father permanent custody.
II.      Expert 
 Witness
Mother argues the family court erred by excluding 
 testimony of a psychologist indicating the children would prefer to live with 
 Mother.  Mother contends the exclusion of this evidence is in contravention 
 of Rule 703, South Carolina Rules of Evidence. 
 [1]   
It is well settled the admission and rejection of testimony 
 are matters largely within the trial courts discretion, the exercise of which, 
 absent abuse, will not be disturbed on appeal. Pike v. South Carolina Dept 
 of Transp., 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000).  To warrant reversal, 
 the appellant must show both the error of the ruling and resulting prejudice. 
 Recco Tape and Label Co. v. Barfield, 312 S.C. 214, 216, 439 S.E.2d 838, 
 840 (1994); Potomac Leasing Co. v. Bone, 294 S.C. 494, 497, 366 S.E.2d 
 26, 28 (Ct. App. 1988) (Before the Court of Appeals will reverse a judgment 
 for an alleged error in the exclusion of evidence, the appellant must show prejudice.). 

At the beginning of Mothers direct examination of 
 the psychologist, Mother moved to admit the psychologists written evaluation.  
 The family court admitted the evaluation into evidence without objection.  The 
 evaluation generally indicated the children preferred living with their Mother.  

Thereafter, Mother asked the psychologist with whom 
 the children had indicated they preferred to live.  The psychologist indicated 
 the children stated they preferred to live with Mother.  Father objected and 
 moved to strike, and the family court excluded the testimony.  
Subsequently, the GAL testified, without objection, 
 that the children told him, at least at some specific points during the custody 
 litigation, they would prefer to live with Mother.  
Assuming, without deciding, the family court erred 
 by excluding the testimony of the psychologist, the testimonys only value was 
 to indicate they had expressed a preference to live with Mother, evidence that 
 was introduced both through the psychologists evaluation and the testimony 
 of the GAL.   Thus, the testimony was cumulative, and its exclusion, if error, 
 is not reversible error.  See Weir v. Citicorp Nat. Servs., Inc., 
 312 S.C. 511, 517, 435 S.E.2d 864, 868 (1993) (holding exclusion of cumulative 
 evidence is not prejudicial error). [2] 
III.    Fathers 
 Acts of Violence
Mother argues the family court erred by excluding 
 testimony of her older son, Randall, indicating Father was violent.  We hold 
 the family court did consider the evidence, and thus, Mothers assignment of 
 error is without merit. [3] 
Appellate courts should interpret judgments by 
 the trial courts as they would any other instrument.  Eddins, 304 S.C. 
 at 135-36, 403 S.E.2d at 166; see also Evans, 354 S.C. at 584, 
 582 S.E.2d at 410 (holding an appellate court must view the circuit courts 
 statements as a whole to determine its reasoning).  Thus, the primary objective 
 is to ascertain and give effect to the intention of the court.  Eddins, 
 304 S.C. at 135, 403 S.E.2d at 166.  However, [a]n order should be construed 
 within the context of the proceeding in which it is rendered.  Dibble v. 
 Sumter Ice and Fuel Co., 283 S.C. 278, 282, 322 S.E.2d 674, 677 (Ct. App. 
 1984). 
During Mothers direct examination of Randall, Mother attempted 
 to introduce testimony indicating in 1991, prior to the divorce decree and original 
 custody award, Father displayed violent tendencies both toward her and Randall.  
 Father objected, arguing the testimony was not relevant because the alleged 
 incidents occurred prior to the divorce decree.  
The family court stated, If you want to proffer you can.  
 But I think Im supposed to--- I think Im supposed to hear whats happened 
 since that divorce decree, and I can take into account whatever the court record 
 shows.  Mother then proffered Randalls testimony.  
During the proffer, Randall testified that he lived with 
 Father from the summer of 1987 until December of 1991.  He testified that during 
 that time Father was violent.  Specifically, he recounted one confrontation 
 where Father allegedly threw him to the ground and dented the floor vent with 
 his head.  He further testified that one month following this confrontation, 
 Mother sent him to live with his father in Germany.  
Subsequently, Mother ended her proffer and began eliciting 
 testimony from Randall for the record.  Thereafter, Father asked if the testimony 
 was part of the proffer or was testimony for the record.  The court replied 
 that the testimony was for the record.  Furthermore, the court indicated it 
 had not yet ruled on whether to admit the previously proffered testimony.   

Reading the transcript of the hearing, it does not indicate 
 if the family court ever ruled, during the hearing, on whether to admit Randalls 
 testimony.  However, in the family courts order, the court states in its findings 
 of fact that:

Her son himself testified that, when he was 15, he 
 had had a confrontation with . . . [Father] which has resulted in the police 
 being called and . . . [Father] leaving the house overnight.  The incident happened 
 sometime in 1992.  A few months after that, . . . [Mothers] older children 
 were sent to live with their father in Germany.

(emphasis added).  
Given the family courts clear, unambiguous language 
 in this ruling, the only logical inference is that the family court did consider 
 Randalls testimony.  Thus, Mothers contention to the contrary is without merit.
IV.    Attorneys 
 Fees
Mother argues the family court erred by awarding 
 Father attorneys fees and not awarding her attorneys fees.   We disagree.
An award of attorneys fees will not be overturned 
 absent an abuse of discretion.  Stevenson v. Stevenson, 295 S.C. 412, 
 415, 368 S.E.2d 901, 903 (1988).  In deciding whether to award attorneys fees, 
 the family court should consider:  1) the parties ability to pay their own 
 fees; 2) the beneficial results obtained by counsel; 3) the respective financial 
 conditions of the parties; and 4) the effect of the fee on each partys standard 
 of living.  E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 
 (1992).   When determining the amount of fees to award, the family court should 
 consider:  1) the nature, extent, and difficulty of the services rendered; 2) 
 the time necessarily devoted to the case; 3) counsels professional standing; 
 4) the contingency of compensation; 5) the beneficial results obtained; and 
 6) the customary legal fees for similar services.  Glasscock v. Glasscock, 
 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).  
Initially, Mother contends the family court erred 
 by awarding Father attorneys fees because the court should not have found a 
 change of circumstances occurred.  Because we hold the family court did not 
 err in granting relief based upon a substantial change in circumstances, this 
 argument is without merit.
Next, Mother contends the family court erred because 
 the order fails to make any of the customary findings required in connection 
 with an award of attorneys fees, even though it cites Atkinson v. Atkinson, 
 279 S.C. 355, 309 S.E.2d 14 (Ct. App. 1983), which defines and requires such 
 findings.
The family courts eighteen-page order is replete with findings 
 involving the respective positions of the parties.  In addition, the courts 
 order noted Fathers counsels professional standing.  Furthermore, Fathers 
 counsel provided an affidavit indicating the time devoted to the case.  Moreover, 
 it is undisputed that Father obtained a beneficial result based upon the change 
 in custody.  
Faced with such a detailed order containing extensive findings 
 of fact, we conclude Mothers argument, merely claiming the family court failed 
 to make customary findings of fact, is insufficient to preserve this assignment 
 of error for appellate review.  See Solomon v. City Realty Co., 
 262 S.C. 198, 201, 203 S.E.2d 435, 435 (1974) (holding conclusory arguments 
 are deemed abandoned); Fields v. Melrose Ltd. Pship, 312 S.C. 102, 106, 
 439 S.E.2d 283, 285 (Ct. App. 1993) (holding an issue is deemed abandoned and 
 thus not presented for appellate review if argued in a short, conclusory statement). 
  Consequently, Mothers argument is without merit.
Lastly, Mother contends the family court erred 
 by not awarding her attorneys fees.  She contends that the financial disparity 
 between the two parties is so great that not awarding her attorneys fees is 
 an abuse of discretion.  
The evidence within Fathers financial declaration 
 indicates he has a net monthly income of $2,225.85 and monthly expenses totaling 
 $1,855.20.  Mothers financial declaration states she has no monthly income 
 and expenses totaling $1,718.00 per month.  The Mothers testimony indicates 
 she lacks monthly income because she has a disability.  
However, the family court did not believe Mothers 
 testimony.  Rather, because Mother failed to produce any evidence outside of 
 her own testimony indicating she had a disability, the family court imputed 
 income to her  a determination Mother has not appealed.  Furthermore, Mother 
 did not win on the merits.  Thus, we hold the family court did not abuse its 
 discretion by denying Mothers motion for attorneys fees.
CONCLUSION
Based on the foregoing, the decision of the family court 
 is 
AFFIRMED.
HEARN, C.J., HOWARD, and KITTREDGE, JJ., concurring.

 
 
 [1] Mother also contends the exclusion contravened Rule 803(3), South 
 Carolina Rules of Evidence.  However, Mother did not argue Rule 803(3), South 
 Carolina Rules of Evidence, to the family court when attempting to admit the 
 psychologists testimony.  Therefore, any argument premised upon that rule 
 is not preserved for appellate review.  See Wilder Corp. v. Wilke, 
 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It is axiomatic that an issue 
 cannot be raised for the first time on appeal, but must have been raised to 
 and ruled upon by the trial judge to be preserved for appellate review.).

 
 
 [2] Mother additionally argues the family court erred by excluding other 
 statements made by the children to the psychologist.  However, Mother did 
 not proffer the psychologists testimony.  Thus, any assignment of error to 
 the exclusion of this testimony is not preserved for appellate review.  See 
 Greenville Meml Auditorium v. Martin, 301 S.C. 242, 243, 391 S.E.2d 
 546, 547 (1990) (An alleged erroneous exclusion of evidence is not a basis 
 for establishing prejudice on appeal in the absence of an adequate proffer 
 of evidence in the court below.).  

 
 [3] Mother 
 also argues the family court erred by excluding portions of both Fathers 
 testimony during cross-examination and her own testimony on direct examination.  
 However, Fathers testimony was not proffered. Thus, any assignment of error 
 to the exclusion of this testimony is not preserved for appellate review.     
 See Greenville Meml Auditorium, 301 S.C. at 243, 391 S.E.2d 
 at 547 (holding an alleged exclusion of evidence is not a basis for establishing 
 prejudice on appeal in the absence of a proffer of the evidence in the court 
 below).  Furthermore, the substance of Mothers testimony was admitted though 
 the psychologists report discussed above.  Thus, the testimony was cumulative, 
 and its exclusion, if error, is not reversible error.  See Weir, 
 312 S.C. at 517, 435 S.E.2d at 860 (holding exclusion of cumulative evidence 
 is not prejudicial error).