**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

South Carolina Department of Social Services, Respondent,

v.

Kristi Morgan (a/k/a Kristi Taylor) and Joshua Willard, Defendants,

Of whom Kristi Morgan (a/k/a Kristi Taylor) is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2018-000775

Appeal From Spartanburg County
Usha J. Bridges, Family Court Judge

Unpublished Opinion No. 2019-UP-097
Submitted February 8, 2019 – Filed February 27, 2019

**AFFIRMED**

Melinda Inman Butler, of The Butler Law Firm, of Union, for Appellant.

Kathryn J. Walsh, of McIlveen Family Law Firm, of Greenville, and Robert C. Rhoden, III, of the South

Carolina Department of Social Services, of Spartanburg, for Respondent.

Wendy N. Griffith, of Talley Law Firm, P.A., of Spartanburg, for the Guardian ad Litem.

---

**PER CURIAM:** Kristi Morgan (Mother) appeals the family court's order removing her minor children, Child E and Child A, pursuant to section 63-7-1660 of the South Carolina Code (2010). The family court found physical neglect as to only Child E but ordered both children remain with their maternal grandmother, Cheryl Robinson, until Mother completed treatment services. Mother did not attend the merits hearing. On appeal, Mother argues the family court erred in (1) finding she physically neglected Child E because his allegedly positive drug screen was not admitted into evidence at the merits hearing, (2) presuming a positive result from her refusal to submit to a drug screen, and (3) failing to state what harm the children would suffer at her home. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 385-86, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

A preponderance of the evidence supports the family court's finding Mother physically neglected Child E. *See* § 63-7-1660(E) ("The [family] court shall not order that a child be removed from the custody of the parent or guardian unless the court finds that the allegations of the [removal] petition are supported by a preponderance of evidence . . . ."). Mother contends that because the family court ultimately did not allow into evidence Child E's drug screen showing he was positive for methamphetamine and amphetamines, the court had no basis for its finding of physical neglect. However, upon review of the entire record, the greater weight of the evidence supported a finding of neglect, even without consideration of Child E's drug screen. When the Department of Social Services (DSS) first became involved with the children, Mother refused a hair strand drug test, and her urine test was found to be diluted. Mother subsequently refused to submit to another drug screen and gave conflicting answers as to the reason for her refusal. The DSS investigator testified DSS's policy was to treat a refusal as a positive

result.  Mother also failed to cooperate with DSS by attempting to prevent DSS from contacting the children at their schools, failing to take part in recommended counseling, and giving contradictory answers about her relationship with Joshua Willard and whether he lived in the home.  Moreover, Mother admitted to a history of drug abuse and was currently prescribed a number of narcotics with potential for abuse.  The Guardian ad Litem (the GAL) observed several other troubling behaviors of Mother, including sending erratic messages to family members, treating the children as peers, and potentially coaching the children about what to say to the GAL.

Furthermore, the family court did not err in drawing an adverse inference from Mother's failure to attend the merits hearing so as not to be compelled to testify against herself.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ."); *Griffith v. Griffith*, 332 S.C. 630, 641, 506 S.E.2d 526, 531-32 (Ct. App. 1998) ("[I]t is permissible for the fact finder to draw an adverse inference in a civil case against a party invoking the Fifth Amendment privilege against self-incrimination.").  Collectively, Mother's behaviors constituted actions that presented a substantial risk of physical or mental injury to the children.  *See* S.C. Code Ann. § 63-7-20(6)(A) (Supp. 2018) (providing a child is abused or neglected when a parent "engages in acts or omissions which present a substantial risk of physical or mental injury to the child . . . ").

Finally, it was in the children's best interest for the family court to order removal and continue custody with Robinson.  *S.C. Dep't of Soc. Servs. v. Randy S.*, 390 S.C. 100, 107, 700 S.E.2d 250, 254 (Ct. App. 2010) ("In all child custody controversies, the welfare and best interests of the children are the primary, paramount, and controlling considerations of the court." (quoting *Pountain v. Pountain*, 332 S.C. 130, 135-36, 503 S.E.2d 757, 760 (Ct. App. 1998))).  The GAL believed children's removal was in their best interest and that Robinson was an appropriate caretaker for the children in the short-term until Mother completed treatment services.  The DSS caseworker also testified Robinson was a safe and appropriate caretaker and the children could be safely returned to Mother once treatment services were completed.  Moreover, Mother agreed for the children to be placed with Robinson prior to the merits hearing, and Mother received supervised visits as often as Robinson's work schedule allowed.  Until Mother cooperates with DSS and completes the required treatment services, it is in the children's best interest to remain with Robinson, where they are able to maintain a

relationship with Mother while she addresses the issues identified by DSS and the family court.

**AFFIRMED.**[1]

**HUFF, THOMAS, and KONDUROS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.