719 S.E.2d 682

**SHEILA R., Appellant,**

v.

**DAVID R., Respondent.**

**No. 4900.**

Court of Appeals of South Carolina.

Heard Oct. 3, 2011.

Decided Nov. 2, 2011.

42

Charles M. Black, Jr., Matthew E. Steinmetz, Max N. Picklesimer, and Carrie A. Warner, all of Columbia, for Appellant.

J. Falkner Wilkes, of Greenville, for Respondent.

Debra L. Walsh, of Greenville, for Guardian ad Litem.

CURETON, A.J.

After the parties' divorce, the family court entered an order awarding custody of the parties' minor child, S.R., to David R. (Father) but provisionally placing her with Sheila R. (Mother). The family court later awarded Father "primary physical placement" as well as legal custody. Mother appeals, arguing the family court erred in (1) using its own standard to determine who should receive custody of S.R. and failing to conduct a best-interests analysis when it subsequently granted Father full custody and (2) failing to appoint a guardian ad litem (Guardian) or consider S.R.'s wishes when determining custody. On appeal, Mother also argues the family court lacked subject matter jurisdiction over the custody issue at the time of the issuance of its 2009 order. We affirm.

## FACTS

Mother and Father married in 1987 and had two daughters. H.R. was born June 5, 1990, and S.R. was born July 20, 1995. In July 2005, Mother filed a complaint seeking separate support and maintenance, equitable apportionment of the marital estate, and custody of both children. Father answered and counterclaimed for the same relief but also petitioned the family court to appoint a Guardian for the children and to require Mother to undergo a psychological examination.

In September 2005, the family court entered a temporary order appointing Debra L. Walsh as the children's Guardian, ordering the parties and children to undergo psychological evaluations by Dr. Craig Horne, temporarily placing both

children with Mother and allowing Father visitation, and permitting the parties to engage in discovery. In a subsequent order, the family court removed H.R. from Mother's custody and placed her with Father.

In September 2006, the Guardian served her report, which cited more than one hundred resources and spanned seventy-six pages. The Guardian recorded her observations about both parents and both children in great detail. The Guardian did not recommend either parent receive custody of the children but instead expressed concern that both parents "demonstrate[d] signs of unresolved anger[ ] and an inability to accept full responsibility for their own actions." According to the Guardian, Father regarded himself as superior to Mother, and Mother refused to address unresolved issues from her childhood that appeared to affect her parenting. Each parent shared with the children inappropriate information about the ongoing conflict and tended to make the non-resident child feel uncomfortable in his or her home. While Father demonstrated an even and patient temperament, he undertook to manipulate those around him by controlling the information available to the Guardian and others and may have engaged in some physical confrontations with the children. While Mother orally expressed a desire to raise both children, she sought custody of only S.R., in whom she encouraged infantile behaviors. In addition, Mother expressed interest in Father's severing contact with S.R. as Mother had done with H.R. Despite making extensive recommendations concerning the parties' and children's future paths, the Guardian's sole recommendation concerning custody was that the children "should be in the custody of the parent most able to provide them with an environment that allows them to be physically and emotionally safe, and allowed to grow in to fully adult young women."

The case was tried over five days in September 2007. The family court devoted more than ten pages of its final order to factual findings concerning the parties', particularly Mother's, disturbing behavior, with subsections devoted to the observations of Dr. Horne and the family court. This order, dated November 29, 2007, granted Mother a divorce on the ground of one year's continuous separation, divided the costs of suit between the parties, and equitably apportioned the marital estate. It established a detailed visitation schedule, obligated

Father to pay Mother both alimony and child support, and relieved the Guardian from further responsibilities. Notably with regard to the issue of custody, the family court recognized Mother had been the children's primary caretaker prior to the separation, was an involved parent, exhibited adequate day-to-day parenting skills, and clearly loved the children. Nonetheless, the family court found Mother was "not fit to have custody of the children" due to numerous demonstrations that she lacked appropriate parental judgment in matters involving Father and failed to recognize the negative impact her behavior had on the children.

As a result of these complicated findings, the family court awarded Father sole custody of both children but placed S.R. physically with Mother. In addition, the family court reserved jurisdiction over the issue of S.R.'s custody for a period of eighteen months,[1] adopting a "wait-and-see" approach. It further required Mother and S.R. to complete Parent and Child Transition classes and all parties to undergo family counseling.

Both parties filed and argued motions for reconsideration. On July 8, 2008, the family court entered an order amending Father's financial obligations to Mother, expanding Father's visitation with S.R., establishing sibling visitation between H.R. and S.R., and denying all other relief. Both parties appealed from the November 2007 and July 2008 orders.

Subsequently, each party filed a complaint for contempt against the other. Six of Father's eight causes of action related to Mother's alleged violations of the family court's orders concerning custody and visitation. Mother's causes of action related to property issues.

On June 5, 2009, following a trial, the family court entered an order finding both parties in contempt of court, awarding Father primary physical placement of S.R. effective immedi-

---

1. The order specified:

    The Court reserves its jurisdiction to fully merge custody and placement with [Father], or take other necessary actions in any subsequent enforcement action on this issue within eighteen (18) months of the filing date of this order. In any such action the burden of proof shall be on [Mother] to show that she has acted properly and has shown the high level of respect for the father/daughter relationship intended under this provision.

ately, and relinquishing its reservation of jurisdiction over S.R.'s custody.[2] The family court found Mother used S.R.'s physical placement with her to prevent S.R. from engaging in the team sports in which Father had enrolled her and to stop the sibling visitation ordered by the family court. Furthermore, the family court found Mother's inflexibility and refusal to cooperate undermined Father's healthcare decisions as legal custodian. Specifically, the order noted Mother refused to ensure S.R. cared for her teeth and pursued a costly and questionably beneficial growth hormone treatment for S.R. over Father's objection. According to the family court, Mother's behavior constituted a "willful and wanton violation of the Final Order and was done out of disregard for the Court's order and Father's authority." Finally, the family court found Mother failed to comply, albeit not willfully, with requirements that she deliver S.R. timely for visitation with Father. The family court reasoned giving Father both sole custody and primary physical placement was in S.R.'s best interest:

> This action is made absolutely necessary because of the ongoing conflict between the Mother and the Father, who has legal custody, about the medical necessity for growth hormone treatment for the child; and the lack of cooperation of the Mother by not complying with the child's extra-curricular activity schedules related to the swimming classes and the cross country running team that she was enrolled in by the Father.

The family court also re-appointed Walsh as Guardian to conduct further investigation into "whether the growth hormone treatment sought by Mother on behalf of [S.R. was] necessary and in the best interest of the child." Mother appealed from this order as well.[3]

## STANDARD OF REVIEW

When reviewing a decision by the family court, the appellate court has the authority to find the facts in accor-

---

**2.** Although the family court entered its order transferring placement after the eighteen-month reservation period expired, the trial of the issues addressed in that order occurred on April 21, 2009, which was within the reservation period.

**3.** The issues on appeal concern only S.R. because any custody issues relating to H.R. were mooted when she turned eighteen in June 2008.

dance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 384, 709 S.E.2d 650, 651 (2011). This broad scope of review does not require the appellate court to disregard the findings of the family court. *Id.* Neither is the appellate court required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Latimer v. Farmer*, 360 S.C. 375, 380, 602 S.E.2d 32, 34 (2004). "Because the family court is in a superior position to judge the witnesses' demeanor and veracity, its findings should be given broad discretion." *Scott v. Scott*, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).

## LAW/ANALYSIS

### I. CUSTODY AND BEST INTERESTS OF S.R.

■ Mother first asserts the family court erred in using its own standard to determine who should receive custody of S.R. and in failing to take S.R.'s best interests into consideration when it subsequently granted Father full custody. We disagree.

■ In all child custody controversies, the controlling considerations are the child's welfare and best interests. *Cook v. Cobb*, 271 S.C. 136, 140, 245 S.E.2d 612, 614 (1978). In determining custody, the family court "must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child." *Woodall v. Woodall*, 322 S.C. 7, 11, 471 S.E.2d 154, 157 (1996). Thus, when determining which parent shall receive custody of a child, the family court "must weigh all the conflicting rules and presumptions together with all of the circumstances of each particular case, and all relevant factors must be taken into consideration." *Ford v. Ford*, 242 S.C. 344, 351, 130 S.E.2d 916, 921 (1963). In other words, "the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." *Parris v. Parris*, 319 S.C. 308, 310, 460 S.E.2d 571, 572 (1995).

We affirm the family court's award to Father of full physical and legal custody of S.R., because we believe it is clear the family court considered the peculiar circumstances before it

and based its decision upon a carefully conducted best-interests analysis. *See Cook,* 271 S.C. at 140, 245 S.E.2d at 614 (recognizing the child's welfare and best interests are paramount in deciding custody); *Parris,* 319 S.C. at 310, 460 S.E.2d at 572 (requiring the family court deciding custody to evaluate the totality of the circumstances); *Housand v. Housand,* 333 S.C. 397, 400, 509 S.E.2d 827, 829 (Ct.App.1998) (stating party seeking change in custody must demonstrate "sufficient facts ... to warrant the conclusion that the best interest of the child will be served by the change").

In both the June 2009 order and the November 2007 order underlying it, the family court painstakingly recorded explicit factual findings related to S.R.'s best interests. The June 2009 order cited Mother's refusal to transport S.R. to the sporting activities in which Father had enrolled her, refusal to cooperate with Father in caring for S.R.'s health, and inability to drop S.R. off timely according to the court-ordered visitation schedule. Concluding its factual findings, the family court found awarding Father physical placement as well as sole legal custody of S.R. was in S.R.'s best interest, was "absolutely necessary," and would provide an immediate remedy to the child-related conflicts between Mother and Father. The record fully supports both of these findings and the decision to award Father full custody of S.R.

We recognize there is some incongruity in the family court's November 2007 order awarding placement of S.R. to Mother in spite of its extensive findings regarding Mother's unfitness and inability to foster a relationship between S.R. and Father, as well as her otherwise poor judgment. Clearly, the family court would have been fully justified in not placing S.R. with Mother initially. In its November 2007 order, the family court described numerous disturbing incidents, including Mother's unnecessary calls to law enforcement during Father's visits (such as the call during S.R.'s tenth birthday party seeking removal of Father's mother and another call during Father's visitation with S.R. seeking to have Father and his brother removed from her home), Mother's report to the Guardian that Father was "on drugs," [4] and Mother's

---

4. In response to this allegation, the Guardian required Father to undergo a hair strand drug test, which revealed no use of illegal drugs.

employment of celebratory signs and gifts to curry S.R.'s favor. The family court cited with concern Dr. Horne's opinion that Mother and S.R. were in danger of developing an "enmeshed" relationship in which neither parent nor child could fully function independently of the other. All of these findings militate in favor of limiting S.R.'s exposure to Mother.[5] Nevertheless, the court in this same order adopted a "wait and see" approach to the "custody of [S.R.]" and provided for counseling for all the parties for eighteen months.

In view of these facts, the June 2009 order simply announced the family court's well-considered conclusion that Mother continued to exhibit a pattern of inflexibility and uncooperativeness in spite of the specific instructions and conditions the family court had imposed on S.R.'s placement with her. Accordingly, we find the family court's June 2009 grant to Father of physical and legal custody of S.R. simply confirmed that the original arrangement, which gave Mother physical placement of S.R. but Father legal custody of her, was not workable.

For the reasons discussed above, we find unpersuasive Mother's argument that the family court imposed its own standard on the custody determination, ignoring S.R.'s best interests and effectively creating an impermissible local rule. The family court was required to weigh "all the conflicting rules and presumptions ... together with all of the circumstances of each particular case" and to consider "all relevant factors." *Ford,* 242 S.C. at 351, 130 S.E.2d at 921. The facts identified by the family court, as well as others set forth in the Guardian's exhaustive report, reveal a complicated power struggle between Mother and Father, fueled by their religious and social views and occasionally punctuated by acts of personal antagonism. We find the family court conducted a thorough best-interests analysis, considered the totality of the circumstances before it, and properly awarded sole custody of S.R. to Father, with liberal visitation to Mother.

---

5. One of the family court's findings states, "[Father]'s custody of [S.R.] is subject to placement continuing with [Mother] (for school assignment and emergency purposes)." We interpret this finding to mean that the family court considered the impact on S.R. of removing her from her present school setting.

## II. GUARDIAN/CHILD'S WISHES

██ Next, Mother asserts the family court erred in failing to appoint a Guardian or consider S.R.'s wishes when determining custody. We disagree.

██ This issue pertains only to the family court's June 2009 order, which mentions neither a Guardian's custody recommendation nor S.R.'s wishes.[6] Moreover, the record does not contain a transcript of the hearing upon which that order was based, and Mother's 2009 complaint for contempt does not raise this issue. Nevertheless, section 63–15–30 of the South Carolina Code (2010) requires the family court to consider "the child's reasonable preference for custody ... based upon the child's age, experience, maturity, judgment, and ability to express a preference." "The significance to be attached to the wishes of [a child] in a custody dispute depends upon the age of the child[ ] and the attendant circumstances." *Brown v. Brown*, 362 S.C. 85, 93, 606 S.E.2d 785, 789 (Ct.App.2004).

The family court did not abuse its discretion in failing to appoint a Guardian or consider S.R.'s preference as to custody. With regard to S.R.'s wishes, S.R. was nearly fourteen years old at the time of the June 2009 order and, therefore, old enough to form and communicate her own desires regarding custody. However, we find her age and circumstances weighed heavily against considering her preference. After conducting a thorough and detailed investigation prior to the 2007 hearing, the Guardian reported to the family court that Mother "[i]ndulged, petted and infantilized" S.R., while simultaneously subjecting S.R. to enormous pressure to view the parties as adversaries and protect Mother. The Guardian further noted S.R. responded to Mother by becoming inappropriately clingy. Both Dr. Horne and another witness who interviewed the parties and their children expressed concern that the relationship between Mother and S.R. was becoming enmeshed. Dr. Horne specifically recommended that the family court assign S.R.'s custody preference no weight. In

---

6. In its November 2007 order, the family court discharged the Guardian. The order on reconsideration did not alter the custody arrangement. In its June 2009 order, the family court re-appointed the Guardian for the limited purpose of investigating whether S.R. might benefit from the growth hormone treatment proposed by Mother.

view of this evidence, we conclude that under the particular circumstances present in this case, the family court did not err in failing to consider S.R.'s preference as to custody.

No basis existed for appointing a Guardian. The family court did not make the requisite finding that would have enabled it to involve a Guardian. *See* S.C.Code Ann. § 63–3–810(A) (2010) (permitting appointment of a Guardian only after a finding that the family court would "likely not be fully informed about the facts of the case and there is a substantial dispute which necessitates a[G]uardian"). On appeal, Mother argues a "substantial dispute" existed concerning S.R.'s health and care. The record reflects a substantial dispute existed between Mother and Father concerning whose healthcare decisions should prevail, in spite of the family court's order seating legal authority with Father. The record does not suggest any reason existed for the family court to believe it would not likely be fully informed about the case without the further assistance of a Guardian. Accordingly, the family court did not err in failing to appoint a Guardian before placing S.R. with Father.

## III. SUBJECT MATTER JURISDICTION

At oral argument, Mother contended for the first time that the family court lacked subject matter jurisdiction to modify custody of S.R. in its June 2009 order. We disagree.

"The lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised sua sponte by the court." *Town of Hilton Head Island v. Godwin,* 370 S.C. 221, 223, 634 S.E.2d 59, 60–61 (Ct.App.2006). "Subject matter jurisdiction is the power of a court to hear cases in the general class to which the proceedings in question belong." *Altman v. Griffith,* 372 S.C. 388, 396 n. 2, 642 S.E.2d 619, 623 n. 2 (Ct.App.2007) (citing *Dove v. Gold Kist, Inc.,* 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994)). The family court is a creature of statute, and, as such, it is a court of limited jurisdiction. *State v. Graham,* 340 S.C. 352, 355, 532 S.E.2d 262, 263 (2000). The family court has jurisdiction over child custody disputes. S.C.Code Ann. §§ 63–3–510(A)(1)(e), –530(A)(30) (2010).

Mother argued that, because the family court improperly placed its reservation of jurisdiction in the portion of the November 2007 order devoted to factual findings and not in the decree portion, the reservation was inoperative. Even if this argument were persuasive, it would not affect the family court's statutory authority to hear and decide disputes over child custody. *See* §§ 63–3–510(A)(1)(e), –530(A)(30) (giving jurisdiction over child custody matters to the family court). Accordingly, the family court did not lack subject matter jurisdiction over any child custody determinations in 2009.

## CONCLUSION

We find the family court conducted the proper best-interests analysis prior to awarding Father both legal and physical custody of S.R. We further find the family court did not err in failing to appoint a Guardian or consider S.R.'s wishes when determining custody and placement. Finally, we find the family court did not lack subject matter jurisdiction over S.R.'s custody. Accordingly, the decision of the family court is

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.