18066

Barbara D. FORD, Respondent, v. Herman A. FORD, Appellant
(130 S. E. (2d) 916)

*Messrs. Leatherwood, Walker, Todd & Mann,* of ·Green-ville, and *Denny, Valentine & Davenport,* of Richmond, Va., *for Appellant.*

*Messrs. Carter & Hill,* and *Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Respondent.*

May 6, 1963.

Moss, Justice.

Barbara D. Ford, the respondent herein, and Herman A. Ford, the appellant herein, were married on March 16, 1952. Three children were born of this marriage, having been born in June 1953, March 1955, and March 1957, the child born in 1955 being a girl and the other two boys. The controversy here is over the custody of these three children.

It appears that the parties, in 1959, were domiciled in Sanford, North Carolina, where they lived in a comfortable rented home and were in the course of planning the construction of their own home. On August 25, 1959, as a result of an adulterous affair on the part of the wife which would have entitled the husband to an absolute divorce under the law of this state, as well as that of most, if not all, other jurisdictions, the parties separated and the wife went to the home of her mother in Richmond, Virginia, the children remaining in North Carolina in the custody of the husband. On August 27, 1959, the wife took the children from North Carolina to the home of her mother in Richmond, Virginia, without the permission of the husband.

The first litigation between these parties concerning the custody of these children took place in Richmond, Virginia, when the husband, on August 28, 1959, filed in the Law and Equity Court of Richmond, Virginia, a petition for *habeas corpus* alleging that the wife had the children and that she "has recently been guilty of acts which were not only of the nature that would justify the petitioner seeking a divorce from her, but which render her unfit to have custody of said children." It was further alleged that the husband was a fit and proper person to have such custody and the best interests of said children would be promoted by them being forthwith returned to his care, custody and control. The wife answered the petition alleging that she was a proper person to have custody of the children and asking that the writ of *habeas corpus* be dismissed.

Thereafter, negotiations took place between the parties, both being represented by able counsel, and they agreed that the husband was, with minor exceptions, to have custody of the children during the school year and that the wife was to have custody during summer vacations and on some holidays. When notified of this agreement, the Richmond Court entered an order dismissing the case upon the representation that the parties had agreed concerning the custody of the infant children. Thereafter, the wife, by her adulterous conduct having forfeited her right to live in the marital domicile in Sanford, North Carolina, and be supported by her husband, came, in January 1960, to Greenville, South Carolina, where she rented an apartment and, after completing a course at a business college, obtained employment and went to work to support herself.

On or about June 20, 1960, the husband, pursuant to the agreement entered into in Richmond, delivered, or caused to be delivered, the children to the wife in Greenville. On or about July 13, 1960, she sought to commence proceedings against the husband with respect to the custody of the children in the Juvenile and Domestic Relations Court of Greenville County, but did not succeed in obtaining service on the husband, and thereafter, on August 10, she caused to be served upon the husband process when he came to Greenville for the purpose of communicating with his children about the recent death of his mother. The wife in her complaint alleged that she was a proper person to have custody and that her husband was not. She did not mention in her complaint the Richmond litigation, the agreement entered into, or any change of condition whatsoever subsequent to the agreement and dismissal of the suit in Richmond.

The husband, by way of answer, charged that the wife was not a fit and proper person to have custody of the children because of her adulterous conduct during the summer of 1959, and further asserted that the husband was a fit and proper person to have the custody. As a further defense, the husband alleged that the wife had violated and breached the

agreement made between the parties with reference to the custody of the children, and had also violated the duly issued order of the court in Richmond, Virgina, made pursuant to said agreement. The case came on for trial before the judge of the Juvenile and Domestic Relations Court of Greenville County on October 24, 1960, and on December 8 the judge filed an order in which he concluded that it was to the best interests of the children that their custody and control be awarded to the mother. He rejected the husband's argument that the order of dismissal in the Virginia court should be treated as *res judicata*. On appeal the Court of Common Pleas concluded that the best interests of the children required that the wife have custody during the school months and the husband during the other parts of the year, in effect, inverting the arrangement previously made in the parents' agreement. The Circuit Court further held that the court was not bound by the dismissal in the *habeas corpus* proceedings in Virginia, which was based on the parents' agreement.

On appeal, this court reversed the holding of the lower court and held that the "dismissed agreed" order of the Virginia Court entered in the *habeas corpus* proceeding against the wife upon agreement as to custody constituted a judgment on the merits barring subsequent action for the same cause and was *res judicata* in Virginia where rendered, and accordingly, was entitled to full faith and credit in this State under Article IV, Section 1, of the Constitution of the United States, *Ford v. Ford,* 239 S. C. 305, 123 S. E. (2d) 33.

The Supreme Court of the United States granted *certiorari* to consider the question of full faith and credit upon which we based our decision. 369 U. S. 801, 82 S. Ct. 642, 7 L. Ed. (2d) 549. Thereafter, this case was argued orally before such court on November 15, 1962, and was decided on December 10, 1962. The Supreme Court held that under the Virginia law an order by which a father's *habeas corpus* proceeding seeking custody of his minor children is dismissed, upon agreement of the parties concerning the custody of the children, is not *res judicata* and South Carolina was

not required to give full faith and credit to such order. Accordingly, our decision was reversed and remanded to us, the court saying:

"We hold that the courts of South Carolina were not precluded by the Full Faith and Credit Clause from determining the best interests of these children and entering a decree accordingly. In holding otherwise, the South Carolina Supreme Court was in error. The case is reversed and remanded to that court for further proceedings not inconsistent with this opinion." *Ford v. Ford,* 371 U. S. 187, 83 S. Ct. 273, 9 L. Ed. (2d) 240.

The appeal now before us relates only to the provision of the decree with respect to the custody of the three children of the parties to the action. The appellant husband asserts the lower court erred in awarding the custody of the three minor children to the wife during the normal school year, the opposite of the agreement previously made between the husband and wife, setting forth several assignments of error with respect thereto.

We have held in numerous cases that the welfare of the children, and what is for their best interest, is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody of their minor children. *Koon v. Koon,* 203 S. C. 556, 28 S. E. (2d) 89; *Powell v. Powell,* 231 S. C. 283, 98 S. E. (2d) 764; *Moore v. Moore,* 235 S. C. 386, 111 S. E. (2d) 695; and *Ex Parte Atkinson,* 238 S. C. 521, 121 S. E. (2d) 4. Our statute, Section 31-51 of the 1952 Code, puts the father and mother upon parity with respect to the legal right of custody of their children and, further expressly provides, as all of our pertinent decisions hold, that the welfare of the children is the first consideration of the court.

The difficulty is not in the recognition of the foregoing principles, but in the application thereof to the facts of a given case, and determining what is for the best interests of the children involves a consideration of all of the circum-

stances of the particular case and, usually, many factors. Before proceeding to apply the aforesaid principles to the instant case, it is, of course, appropriate to set forth in detail the facts disclosed by the record at the time of the trial.

The children were in the actual custody of the husband in the home in Sanford, North Carolina, those of school age being in school there. In the home the husband had, in addition to a servant, a very competent lady of excellent repute, a Mrs. Perry, aged 52, who lived in the home and cared for the children. Mrs. Perry had raised two fine children of her own, and, in addition to caring for the children of the parties, operated a kindergarten which she had been operating for some time before taking the position with the husband in this case. The husband had a substantial position in the tobacco industry and a very adequate income. During two months of the year his work hours were from 7:30 in the morning until 5:30 in the afternon, and the rest of the time the husband set his own hours, and usually got home from work around 2:30 in the afternoon, never later than 4:30 or 5, after leaving home in the morning at 8:30.

Prior to the estrangement of the parties, the husband had been called upon to travel considerably in his work, but had been successful in eliminating most of his travel so that he could be at home with the children. The new home which the parties were planning at a cost of approximately $40,000.00, when they separated, was nearly completed and ready for occupancy at the time of the trial.

But for the admitted misconduct of the wife, she would be a part and parcel of a very adequate family domicile where she would have been well supported by her husband and the children would have had the constant and uninterrupted love, care and kindness of both parents. As a result, however, of her conduct, her situation was that she was living separate and apart not only from her husband, but from her children, and employed earning her living at an advertising agency. Neither her hours of work nor the time which she would have to devote to the care of her children appeared in the

record. She occupied a rented apartment and offered the court no details as to her plans or arrangements for the care of her children during her absence at work. It does appear that she employed a negro servant, but no details as to this servant are contained in the record; nothing about her age, competency, permanency, hours, or anything else to throw any light upon what the actual situation would be in the apartment home of the wife with respect to the care and welfare of the children.

· The wife, in her pleadings, alleged no change of conditions as to either party as a basis for changing the agreement entered into by the parties. The evidence did, however, disclose a change of condition with respect to the husband, which was that his mother who spent at least a part of the time with him and the children had died, her death occurring on August 4, 1960, after the wife sought to commence this proceeding, but before service was actually effected on the husband, and the death of the husband's mother was not a basis of the proceeding. This one change of condition was more than offset by the fact that the husband had substantially rearranged his work in order to be at home with his children, and has also secured the excellent services of Mrs. Perry. The only change of condition with respect to the wife, if it can be termed such, is that she offered evidence tending to prove that she was leading an exemplary life in Greenville, and that her misconduct of the summer of 1959 was a thing of·the past.

Although this is not a divorce action, the record ■■ clearly reflects that the husband would have been entitled to a divorce, under the law of this state, had he sought one on the ground of misconduct of the wife.

"In ·determining to whom the custody of a child of divorced parents shall be awarded, the court must weigh all the conflicting rules and presumptions together with all of the circumstances of each particular case, and all relevant factors must be taken into consideration." 27B C. J. S. Divorce § 309(1), page 449.

The text from which the foregoing quote is taken goes on to point out that while the controlling consideration of the court in making the award is the welfare and best interests of the child, many factors should be considered in determining such welfare. Among the various factors and circumstances, mentioned in the text, which the court should consider in determining what is for the best interest of a child or children in a particular case are the age, health and sex of children, sometimes referred to as the "tender years doctrine", under which the mother is given preference as to children of tender years; the residence, surroundings and opportunities afforded in the respective environments; the conduct and suitability of parents; the preference in favor of the innocent or prevailing party; the financial condition of the parents; agreements between parties, and others.

The elements or factors which should be considered by a court in determining the welfare and best interests of a child are also discussed in 67 C. J. S. *et seq.,* Parent and Child, § 12, page 646. It is there pointed out that one factor to be considered is the actual possession of the child. From the text, at page 667, we quote the following:

"As between the parents actual possession of the child may have weight in determining the question of custody, for it has been said that the power to change the custody of the child between contending parents living apart is a delicate discretion not to be exercised except in cases in which its necessities clearly demand it."

The claim of the wife to the custody of the children here, in the light of the pleadings, the evidence and the findings of fact below, rests solely on the "tender years doctrine". An analysis of the order of the trial court and the order of the circuit court shows that in each instance the mother was favored by the decisions below solely on the basis of that doctrine, and that other facets and circumstances which should have been considered in determining what was in the best interest of the children were either not consid-

ered or, if considered, were given no effect. Both judges found as a matter of fact that both parents were, at the time of the trial, fit parents to have the custody of the children, and then proceeded to decide on the basis of the "tender years doctrine", and on that basis alone, that the mother should be favored. In this, we think they erred.

"The general rule as to preference to be given to the mother in the award of custody of young children, or so-called 'tender years doctrine,' is not, however, inflexible and applicable in every case merely because the mother has not been shown clearly unfit; and it has been said to be merely an aid to the court or one facet of the basic principle that the best interests and welfare of the child are the controlling considerations. The general rule is qualified by the requirement that other things be equal, and whether or not such rule has been recognized or affirmed by statute, the mother of a child of tender years is not entitled to its custody as a matter of law. Accordingly, such a child may be awarded to the father, in the discretion of the court, where the circumstances of the case require it for the child's best interests." 27B C. J. S. Divorce § 309 (4), page 461.

Applicable to the controversy here is the following quote from *Powell v. Powell,* 231 S. C. 283, 98 S. E. (2d) 764:

"It is usual for the custody of children of divorced parents to be awarded to the parent who is innocent of the conduct which led to the divorce. 27 C. J. S. Divorce § 309e, p. 1175: 'Preference should be given to the party not at fault, and the custody of the child is usually awarded to the party who prevails in a suit for divorce * * * In some jurisdictions. * * * a divorce on the ground of adultery is a conclusive adjudication of the guilty party's unfitness to have custody.' 17 Am. Jur. 518, Divorce and Separation, Sec. 683: 'Other considerations being equal * * * it is usual to award custody of children to the innocent spouse.'

"It is unusual, but by no means unprecedented, for the custody of children of tender years to be awarded to the

father rather than to the mother. 27 C. J. S. Divorce Sec. 309c, p. 1172. Always, the controlling consideration is the welfare of the children. 'This right of the mother (to the custody of children of tender years) may be recognized although she is the party in fault, if such fault does not reflect on her moral character.' (Emphasis added.) 17 Am. Jur. 518, Sec. 683."

With respect to the agreement between the parties, the trial judge and the circuit judge apparently did not consider or decide the legal implications or effect of the same.

■ The general law on the subject of contracts or agreements as to custody of children is set forth in 17A Am. Jur. 17, Section 822, the concluding sentence of the text reading as follows:

"The rule is that contracts between spouses as to the custody of children will be recognized unless the welfare of the children requires a different disposition."

■ It seems to us that under this general rule it was incumbent upon the wife to show that the welfare of the children required the court to ignore and set aside the agreement of the parties.

Authorities in support of the quoted rule include *Slattery v. Slattery,* 139 Iowa 419, 116 N. W. 608, and *Lowery v. Lowery,* 108 Ga. 766, 33 S. E. 421. Pertinent here, we think, is the decision in *Andrews v. Geyer,* 200 Va. 107, 104 S. E. (2d) 747, Virginia being the state where the agreement here under consideration was made. In that case, the wife, who was the guilty party in a divorce proceeding, sought to set aside a custody provision contained in the divorce decree. The court held that she was not entitled to any relief, and at least one basis of the decision was that she had agreed to the custody provisions outlined in the decree. In the *Lowery case,* above cited, it was said that the court would ordinarily enforce a contract regarding custody, provided that the welfare of the children did not require a different disposition, and provided that the party seeking to enforce the contract had not breached or violated the same.

Here, the husband scrupulously lived up to the provisions of the agreement. The only reason the children were ever physically in the jurisdiction of the Juvenile and Domestic Relations Court of Greenville County was that the husband saw to it that they were there in accordance with the terms of the agreement. On the other hand, the wife, almost as soon as she got them within the physical jurisdiction of that court, sought, with the aid of the court, to abrogate the agreement. Aside from the "tender years doctrine" upon which her claim rests, there is nothing in the record to indicate that the agreement entered into did not serve the best interests and welfare of the children.

Pertinent to the issue before us, we think, is whether the agreement entered into between the parties was fair, just, equitable and in the best interests of the children at the time it was entered into. If it was, another pertinent inquiry is whether there is any showing that there had been a sufficient change of conditions to indicate that the agreement was not, under the circumstances prevailing at the time of the trial, a proper one in the best interests of the children. Certainly, if the case had been presented to this court under circumstances which existed at the time the agreement was entered into, there is nothing to show that the agreement would not have been approved as being in the best interests of the children, unless it be that the agreement accorded the wife greater rights with respect to the children than may have been accorded to her by a court under a contest.

The facts and circumstances shown by the record, we think, are entirely insufficient to warrant this court in disregarding the agreement entered into between the parties.

While we recognize the soundness of the "tender years doctrine" in proper cases, we do not think that it should prevail in a case such as this to the exclusion of all other rules and considerations. Aside from that doctrine every other facet of the case, as shown by the record at the time of the trial, greatly outweighed that doctrine, in favor of the recog-

nition and enforcement of the agreement. The trial court, as well as the circuit court, should have given effect to the other considerations and denied relief to the wife.

It should be unnecessary to point out that our decision here is, of necessity, based upon the facts existing in October 1960, as shown by the record, and we, of course, do not prejudge any question as to what is for the best interests of the children under presently existing facts and circumstances.

Since the children, under the erroneous order of the Juvenile and Domestic Relations Court of Greenville County, are apparently now in the custody of the wife and in school in Greenville, it is not in the best interests of the children that their custody be disturbed until the end of the present school year. However, since, under the agreement of the parties, the wife will be entitled to the custody of the children during the summer vacation of 1963, it is only equitable that the father have some custody during vacation.

Accordingly, it is ordered that the present custody of the children shall not be disturbed until the end of the current school year. It is further ordered that the husband shall have the custody of the children for a period of thirty days during the summer vacation of 1963, in addition to the custody to which he is entitled under the agreement between the parties.' The exact time of this thirty day period of custody shall be fixed by the Juvenile and Domestic Relations Court of Greenville County, upon motion of either party, if they find themselves unable to agree thereabout.

For the reasons herein stated, the order appealed from is reversed and the cause remanded for any necessary further proceedings in accordance with the views herein expressed and the foregoing order.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.