715 S.E.2d 379

**Linda J. KEEFER, Appellant,**

v.

**Rodney A. KEEFER, Respondent.**

**No. 4868.**

Court of Appeals of South Carolina.

Submitted May 4, 2011.

Decided Aug. 10, 2011.

Harry C. Wilson, Jr., of Sumter, for Appellant.

Richard C. Jones, of Sumter, for Respondent.

SHORT, J.

In this action for divorce, Linda Keefer (Wife) appeals from the family court's order directing that the qualified domestic relations order (QDRO) be prepared using the shared plan method, arguing the court should have directed that the order be prepared using the separate plan method to determine her portion of Rodney Keefer's (Husband) pension plan. We affirm.[1]

## FACTS

Husband and Wife were married in 1974 in Sumter, South Carolina, and two children were born of the marriage. The parties officially separated in 1991.[2]

In March 2007, Wife filed for divorce in the Sumter County Family Court, seeking permanent periodic alimony; equitable division of the marital assets and debts; permanent health insurance coverage; and attorney's fees and costs. Husband

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. While Husband and Wife were married for seventeen years before they separated, the parties lived together for less than three years.

filed an answer, seeking a divorce based on the ground of desertion; equitable division of the marital assets; possession of the marital home; and possession of four vehicles. Husband also asserted Wife was not entitled to alimony due to her abandonment of the marriage; requested both parties be barred from claiming any interest in each other's retirement and/or pension plans; and requested each party be responsible for their own debts, health and life insurance, and attorney's fees.

On March 3, 2008, the parties reached an agreement on all issues relating to property, separation, and support. That day, the family court granted Wife a divorce on the ground of one-year's continuous separation and incorporated the agreement into the divorce decree. After the divorce decree was filed, the parties began preparing the QDROs concerning Husband's 401(k) and pension plan. The parties reached an agreement as to the 401(k), but not as to the pension plan.[3] The QDRO form provided by Husband's employer for his pension plan could be prepared using one of two methods: the shared plan or the separate plan. Under the shared plan, Wife's payments from the plan would begin when Husband began drawing from the fund, but Wife would lose benefits on her death and the benefits would revert to Husband. Additionally, Husband's death would terminate Wife's benefits.

Under the separate plan, which Wife preferred, Wife could elect to draw payments before Husband's retirement, and the benefits would survive the death of Husband and/or Wife. The parties disagreed about which method the QDRO should use to determine Wife's benefits under Husband's pension plan, and as a result, Wife filed a motion for court intervention. On March 27, 2009, the family court filed an order, directing the QDRO be prepared using the shared plan method. Wife filed a motion to reconsider, which the court denied. This appeal followed.

---

3. Two QDROs were required. One order was to allow a trustee-to-trustee transfer of $50,000 from Husband's 401(k) to Wife. This QDRO is not at issue in this case. The other order was required so that Wife could share in Husband's pension plan, which was separate from Husband's 401(k).

## STANDARD OF REVIEW

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the trial court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 388, 709 S.E.2d at 653. The appellant bears the burden of convincing this court that the family court erred in its findings. *Id.* at 391, 709 S.E.2d at 655.

## LAW/ANALYSIS

Wife argues the family court erred in directing that the QDRO be prepared using the shared plan method. She maintains the court should have directed that the order be prepared using the separate plan method to determine her portion of Husband's pension plan. We disagree.

The construction of a separation agreement is a matter of contract law. *Nicholson v. Nicholson*, 378 S.C. 523, 532, 663 S.E.2d 74, 79 (Ct.App.2008). "The court's only function with an agreement that is clear and capable of legal construction is to interpret its lawful meaning and the intention of the parties as found within the agreement and to give them effect." *Id.* If the agreement is ambiguous, the court should seek to determine the parties' intent. *Id.* at 533, 663 S.E.2d at 79. "An ambiguous contract is one capable of being understood in more ways than one, an agreement obscure in meaning through indefiniteness of expression, or having a double meaning." *Id.* (quoting *Davis v. Davis*, 372 S.C. 64, 76, 641 S.E.2d 446, 452 (Ct.App.2006)). If a marital agreement is unambiguous, the court must enforce it according to its terms.[4] *Id.* at 532, 663 S.E.2d at 79. However, if the agreement has been merged into the court's decree, as it was in this case, "the decree, to the extent possible, should be construed

---

4. In their briefs, both Husband and Wife maintain the agreement is unambiguous. Additionally, in its order denying Wife's motion for reconsideration, the court adopted Husband's return to Wife's motion, which asserted the agreement is unambiguous.

to effect the intent of both the judge and the parties." *Id.* By merging an agreement into a divorce decree, the court transforms it from a contract between the parties into a decree of the court. *Emery v. Smith,* 361 S.C. 207, 214, 603 S.E.2d 598, 601 (Ct.App.2004). "With the court's approval, the terms become a part of the decree and are binding on the parties and the court." *Id.* (quoting *Moseley v. Mosier,* 279 S.C. 348, 353, 306 S.E.2d 624, 627 (1983)). "Thereafter, the agreement, as part of the court order, is fully subject to the family court's authority to interpret and enforce its own decrees." *Id.* at 214, 603 S.E.2d at 601–602; *see Terry v. Lee,* 308 S.C. 459, 462, 419 S.E.2d 213, 214 (1992) (stating the family court has exclusive jurisdiction to determine the rights of the parties under an agreement incorporated into a family court decree).

The separation agreement at issue in this case, which the court merged into the divorce decree at the parties' request, provides in pertinent part:

(ii) Pension/Retirement Benefits: *Upon the Husband's retirement,* the Wife shall be entitled to share in the Husband's International Paper retirement pension fund, which is separate and different from the 401(k) fund, in that percentage share as calculated consistent with the formula set out below:

Step One: *19.5 (Years of Service through March/07)* ? ? ? (Husband's Total, Actual # of Years Service w/ International Paper Co./Union Camp at the date of his actual retirement)

Step Two: The above result is multiplied by 40% (percent).

Step Three: The Wife receives the resulting *percentage of each monthly pension,* consistent with the above calculation, *at the time the Husband begins to draw payment* from his International Paper retirement pension fund. (Emphasis added in italics).

Wife asserts the family court should have ordered the QDRO be prepared using the separate plan because it allows Wife to elect to draw her share of the payments from the plan before Husband's actual retirement date. The separate plan also allows the benefits to survive the death of Husband and/or Wife, and Wife can designate a beneficiary to receive her share of the benefits upon her death. In contrast, under

the shared plan, Wife cannot receive any benefits until Husband retires and begins to draw from the fund. Additionally, Husband's death will terminate Wife's benefits, and if Wife predeceases Husband, Wife's benefits will terminate upon her death and the benefits will revert to Husband. Wife argues the agreement provides that she will receive forty percent of the marital portion of Husband's pension benefits and there is no mention in the agreement that she would lose these rights upon her or Husband's death.

As the family court judge noted in his order on Wife's motion for court intervention, "[w]hen the parties reached their agreement, to include Husband's retirement, the parties had not discussed which QDRO model to use. The dispute about which QDRO model to use arose only after the plan administrator (International Paper or IP) informed the parties and lawyers of the two QDRO models." Thus, the judge concluded, "it is not correct to say that this court is saddled with determining the intent of the parties regarding which QDRO to use before the two models were revealed." The judge determined it was the role of the court to "determine which QDRO model most accurately reflects the parties' agreement."

In its review of the agreement, the family court noted the agreement provides, "[u]pon the Husband's retirement," "[t]he Wife receives the resulting percentage of each monthly pension," and "at the time the Husband begins to draw payment." Thus, the court determined "that Wife's share of the retirement benefits would start and be received on a monthly basis," and "she would not be able to elect to receive her share before Husband's monthly retirement payments or benefits started." Additionally, the court noted, "there is no 'survivorship' provision in the agreement similar to such language in the separate plan," "[t]he agreement states ... Wife's portion is that percentage of each of Husband's monthly benefit[s] or payment[s]," and "the agreement states that Wife 'shall share' in Husband's retirement account." Furthermore, the court noted the agreement did not contain language "that reflects that Wife would have certain options that are provided in the separate plan." As a result, the court found the agreement language more closely mirrored the shared plan QDRO model. Additionally, both parties submitted multiple versions of the

QDRO to the plan administrator, and the version accepted twice by the administrator was the shared plan model.

Therefore, based on the family court's authority to interpret and enforce its own decrees and our review of the evidence, we find the evidence supports the family court's determination.

## CONCLUSION

Accordingly, the family court's order directing that the QDRO be prepared using the shared plan method is

**AFFIRMED.**

FEW, C.J., and GEATHERS, JJ., concur.