**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Tammy Denise Shaw, Respondent/Appellant,

v.

David Lynn Shaw, Appellant/Respondent.

Appellate Case No. 2017-002258

Appeal From Greenville County
Tommy B. Edwards, Family Court Judge

Unpublished Opinion No. 2020-UP-227
Submitted June 1, 2020 – Filed July 29, 2020

**AFFIRMED**

Randall Scott Hiller, of Greenville, for
Respondent/Appellant.

Bruce Wyche Bannister and Luke Anthony Burke, both
of Bannister, Wyatt & Stalvey, LLC, of Greenville, for
Appellant/Respondent.

Robert A. Clark, of Greenville, Guardian ad Litem.

**PER CURIAM:**  This is a cross-appeal in a divorce case.  David Shaw (Husband) and Tammy Shaw (Wife) both take issue with the family court's order enforcing part of the agreement they reached at mediation.

Husband argues the family court erred by failing to enforce the agreement's custody and visitation provisions.  He also claims the family court erred in failing to apply payments he made pursuant to the temporary order toward the lump sum payment in the parties' agreement and by failing to award him attorney's fees.

Wife argues the family court rightly declined to enforce the settlement's custody and visitation provisions but erred by enforcing the settlement's financial provisions.  She also claims error in the denial of attorney's fees.

We affirm for the same reasons the family court gave in its decision.  The law favors settlements and provides that courts should enforce settlement agreements absent some legal ground for rescinding the contract.  As to settlements involving custody and visitation, however, those issues are subject to the family court's supervisory authority, and we share the family court's concern that enforcing the agreement might not be in the best interest of the remaining minor child.

On the periodic payments Husband made between the temporary order and settlement's enforcement, the family court fully credited those payments as being made pursuant to the settlement and we see no grounds to disturb that decision.

We decline to disturb the family court's decision on attorney's fees, though we note the family court remains able to consider attorney's fees at this case's conclusion.

## FACTS

Husband and Wife married in July 1991.  They had five children together, three of whom were minors when the case was filed in 2015.

During the marriage, the parties bought several residential rental properties and unimproved lots.  Husband purchased and maintained the properties.  Wife collected rent checks, kept the rent roll, and made deposits.  Many of the properties were encumbered with mortgages, including loans from Husband's parents.  Wife also had her own business cleaning homes.

The parties separated in August 2015 after Wife admitted to Husband that she was having an affair.  Wife filed this action seeking divorce and related relief.

Husband filed an answer and counterclaim also seeking a divorce and related relief.

In November 2015, the family court entered a temporary order granting primary placement of the parties' minor children to Husband, granting Wife visitation, appointing a guardian ad litem (GAL), barring Wife spousal support due to her admitted adultery, and ordering Husband to pay Wife $2,500 per month "for the purpose of buying-out any of Wife's marital interest in the jointly-held properties."

The parties mediated two months later in an effort to resolve the case quickly. Prior to mediation, Husband gave Wife a financial declaration and an exhibit purportedly delineating all property and debts comprising the marital estate. Wife engaged the services of an accounting expert, but according to Wife, the expert did not do a detailed review of the information Husband provided. Instead, this expert merely gave Wife an estimate of what he would charge to review that information and present a report to the family court.

Both parties were represented by attorneys prior to and at the mediation. The parties reached a settlement agreement and signed it after mediating for about five hours. The settlement agreement divided the marital assets listed on Husband's declaration and required Husband to make multiple cash payments to Wife in exchange for her interest in all properties. Husband was to make monthly payments to Wife over the next twelve years and pay a lump sum of $47,000 within sixty days of the family court approving the agreement. The payments would begin at $2,500 per month for the first two years and would increase by $1,000 per month every two years thereafter.

The settlement agreement also addressed custody and visitation of the parties' three minor children. Because two of these children, AMS (born 1999) and LES (born 2000), are currently over the age of eighteen, we have omitted the custody provisions pertaining to them.

In relevant part, the agreement stated custody of the parties' youngest child, HGS (born 2005), would alternate between Husband and Wife from week to week. The agreement further provided that the parties would abide by Judge Brown's standard restraining orders, agree to foster and encourage a relationship with the other parent, and refrain from making disparaging comments about the other parent.

Wife claimed she discovered after mediation that at least one of the parties' marital assets had been excluded from Husband's pre-mediation financial declaration. She

also claimed Husband had overstated alleged debts to his mother and father, excluded a six figure receivable, and was actively marketing a property for one and a half times the value he placed on that same property in his financial declaration. Based on this, Wife claimed the agreement was not valid.

Husband filed a motion to enforce the agreement. The family court conducted a hearing in June 2017. This was roughly a year and a half after the parties had ostensibly settled the case at mediation.

Wife acknowledged during the hearing that she entered into the settlement agreement based on the information Husband provided and that she wanted to resolve the case quickly. She said that she did not hire an appraiser to value the parties' real property, did not ask the parties' business partner for information about the business properties, did not request any information about Husband's debts to his parents, and did not send discovery requests or subpoenas to Husband's bank to request any records prior to mediation.

Wife also testified she had not been under the influence of any drugs or alcohol and nobody threatened her to induce her to enter into the agreement. Wife admitted she participated in negotiating the agreement, read the agreement before signing it, and had understood she was giving up her right to a trial by signing the agreement. Wife also acknowledged she handled parts of the rental business including collecting checks, managing the rent roll, and making deposits. However, Wife denied that she had knowledge of the total rents and claimed she did not know how much income Husband earned. Wife testified she believed the agreement was advantageous at the time because it granted her liquidity and gave Husband all of the risk associated with the rental properties.

The GAL participated in the hearing and submitted a report for the family court's consideration, but did not formally testify and was not examined by the parties. The report noted each parent accused the other of unflattering conduct. Wife accused Husband of preventing the children from speaking with her, sending abusive text messages, abusing alcohol and gambling, and other concerning actions. Husband denied the allegations and blamed Wife for many of the issues concerning the children.

The GAL report noted that one of the parties' sons moved in with Wife after Husband kicked the son out of the house. The report stated HGS—the parties' youngest child—was reluctant to speak with the GAL on many occasions, typically when Husband brought her to the meeting. Although HGS originally stated she

liked the custody arrangement—the temporary order granted custody to Husband and weekend visitation to Wife—she later refused to answer this same question. When pushed on whether she wanted to spend more time with Husband or Wife, HGS answered "my mom." According to the report, HGS felt like Husband put her in the middle of his and Wife's relationship.

The GAL also interviewed references the parties provided. The responses from references varied; however, those who were opposed to the children living with Husband voiced concerns that they did not believe Husband had been or was capable of being the children's primary caregiver. The report included notes from one reference who claimed Husband frequently used inappropriate language in front of the children and detailed an incident when one of the children called Wife while the children were on a cruise with Husband claiming Husband was drunk and had locked the child on the ship's balcony.

The GAL's written report included the conclusion and recommendation that the mediated custody and visitation agreement was in the best interest of the remaining minor children. However, the GAL made several statements at the hearing expressing concern about things occurring before and after mediation. The GAL said that he was not in a position to make a final custody recommendation, he was concerned about Husband's inability to compartmentalize his disdain for Wife's actions, and this inability was starting to affect the parties' youngest child. When the family court directly asked the GAL whether enforcing the settlement's custody and visitation provisions would be against the youngest child's best interest the GAL answered he did not know.

As we noted at the beginning, the family court granted Husband's motion to enforce the settlement agreement in part and denied it in part. The family court found both parties entered into the agreement voluntarily and negotiated the agreement "with the advice of independent, experienced, and competent counsel." The court further found the agreement was reasonable and fair, from both a procedural and substantive perspective. With respect to procedural fairness, the family court found Wife was represented by counsel at all times, had personal knowledge of many of the aspects of the business, and had access as well as the tools of access available for discovering all of the financial information she needed. As to substantive fairness, the family court noted the factors for that assessment supported a finding that the agreement was fair.

However, the family court denied Husband's motion to enforce the agreement's custody and visitation provisions. The court focused on the best interest of the

children, noting its concern with the "negative, almost toxic, atmosphere" that had developed during the time between mediation and the hearing to enforce the mediated agreement. The family court expressed significant concern whether week-to-week shared custody was in any of the children's best interest and set a further hearing to consider custody and visitation.

Husband filed a motion for reconsideration arguing the same issues he argues here. The family court denied the motion for reconsideration but clarified part of its ruling as to payments Husband made prior to the enforcement order, explaining:

> To ensure there is no misunderstanding of the parties[,] my prior order is amended to the extent necessary to reflect that the payments required for years one and two pursuant to the memorandum of agreement commenced on November 1, 2015[,] for the purposes of the scheduled payments and all amounts paid thereunder shall be applied to the $767,059.00 due from [Husband] to [Wife].

Both parties filed appeals and the appeals were consolidated.

## ISSUES ON APPEAL

### A. Husband's Appeal

1. Whether the family court erred by failing to approve the mediated settlement agreement's custody and visitation provisions?

2. Whether the family court erred by failing to apply payments Husband made pursuant to the temporary order toward the lump sum payment in the parties' agreement?

3. Whether the family court erred by failing to award Husband attorney's fees?

### B. Wife's Appeal

1. Whether the family court erred by enforcing the settlement agreement's financial provisions?

2.  Whether the family court erred by failing to award Wife attorney's fees?

**STANDARD OF REVIEW**

In family court appeals, we review factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011).  Although we review the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651-52 (2011).  This standard also does not abrogate the long-standing principle that the appealing party has the burden of showing the preponderance of the evidence is against the trial court's findings.  *Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018).

**MEDIATED SETTLEMENT AGREEMENT: FINANCIAL PROVISIONS**

Wife argues the family court erred in enforcing the mediated settlement agreement because it is not procedurally or substantively fair and was obtained through Husband's misrepresentation and fraud.  Wife contends Husband misrepresented the marital estate's size when he failed to include all marital assets on the disclosure he provided at the mediation, allegedly overstated debts to his parents, and purportedly undervalued other assets.  She asserts the family court erred in analyzing whether the agreement was procedurally and substantively fair instead of using the standards for ante-nuptial agreements, fraud, or negligent misrepresentation.

Husband argues the family court did not err in enforcing the settlement's financial provisions because, in his view, the settlement was procedurally and substantively fair.  He denies any intentional misrepresentation, contends the parties entered into the agreement freely and voluntarily, and argues the agreement was procedurally fair and reasonable.  He notes that Wife's attorney advised her throughout the process, Wife had the opportunity to perform any discovery she wanted before mediation, and Wife had knowledge of the parties' rental properties because she managed the rental incomes from those properties during the marriage.  He further argues the agreement was substantively fair and reasonable because Wife received significant marital assets despite her infidelity.

When one party seeks to incorporate a settlement agreement in a divorce proceeding and the other seeks to repudiate it, the family court must assume jurisdiction over it.  *Funderburk v. Funderburk*, 286 S.C. 129, 130-31, 332 S.E.2d

205, 206 (1985). The first step in this process is for the court to "determine if the agreement was entered into freely and voluntarily." *Burnett v. Burnett*, 290 S.C. 28, 29, 347 S.E.2d 908, 909 (Ct. App. 1986).

Next, the court must determine whether the agreement is fair under all circumstances. *Id.* "In deciding whether an agreement is fair, it is not the task of the [c]ourt to decide the rights of the husband and wife as if there had been no agreement." *Id.* at 30, 347 S.E.2d at 909. "Rather, the [c]ourt must decide if the agreement is within the bounds of reasonableness from both a procedural and substantive perspective." *Id.*

Whether an agreement is substantively fair is a broad test based on the facts of each case. As mentioned above, the question is whether "the agreement is substantively within the bounds of reasonableness." *Id.* at 30, 347 S.E.2d at 910. Some factors courts have relied on include "the length of the marriage, the parties' ages, incomes, needs and obligations, as well as their financial status and relative contributions to the marriage." *Doe v. Doe*, 286 S.C. 507, 514, 334 S.E.2d 829, 833 (Ct. App. 1985). Precedent explains "[a]n agreement shall not be voided as unfair merely because the agreement did not divide the property on the basis of the parties' relative incomes and contributions to the marriage. All of the relevant factors must be weighed." *Funderburk*, 286 S.C. at 131, 332 S.E.2d at 206. Precedent also instructs the court to recognize that parties "should be in a better position than any [court] to know whether [an agreement] is substantively fair." *Burnett*, 290 S.C. at 31, 347 S.E.2d at 910.

We find the family court did not err in granting Husband's motion to enforce the agreement's financial provisions. First, the record establishes Wife entered into the agreement freely and voluntarily. Wife testified that she was not under the influence of any drugs or alcohol and nobody threatened her to induce her to enter into the agreement. Indeed, Wife admitted there was no coercion or duress.

Next, the agreement was procedurally fair. In *Burnett*, this court found an agreement was procedurally fair when the wife was advised of her right to consult with an attorney, modified the agreement before signing it, and either knew of or had access to the husband's financial information before signing the agreement. 290 S.C. at 30, 347 S.E.2d at 909. Here, both parties were represented by counsel. Indeed, counsel joined the parties in signing the agreement. Wife testified she participated in negotiating the agreement, read the agreement before signing it, and understood she was giving up her right to a trial. There is also no question Wife had some personal knowledge of many of the aspects of the parties' rental business

because she helped manage the business. Furthermore, Wife had the opportunity to discover the financial information pertaining to the marital estate, declined to do so, and opted instead to rely on Husband's disclosure.

Finally, the settlement agreement was substantively fair. The parties' age, maturity, experience, and the long term nature of the marriage support a finding of substantive fairness. The agreement's 55/45 division of the marital estate meets the parties' needs and obligations, accounts for the parties' financial circumstances, and contemplates the relative contributions in the absence or presence of marital fault.

Additionally, we find the parties' incentive to reach a quick resolution in an effort to create some stability in their lives and family supports a finding of fairness. Both parties said they had been interested in quickly coming to an agreement. Furthermore, Wife testified the agreement was advantageous to her because it granted her liquidity while giving Husband the risk of the rental properties. *See Burnett*, 290 S.C. at 31, 347 S.E.2d at 910 (stating the parties "should be in a better position than any [court] to know whether [an agreement] is substantively fair").

We acknowledge Wife's allegation that Husband purposefully did not disclose valuable assets in the marital estate prior to or at mediation. Still, the fact remains that Wife made the decision to rely on Husband's disclosure and did not conduct further investigation to verify all marital assets were listed in the disclosure despite the fact that she had some knowledge of the assets due to her participation in the business as well as the tools to obtain further knowledge through discovery.

If there was evidence Wife had diligently investigated Husband's financial disclosure but still failed to discover these alleged misrepresentations, we would be more inclined to believe the agreement was not substantively fair. Here, however, the parties admit they entered into the settlement agreement voluntarily and with the advice and assistance of counsel. We accordingly find the family court did not err in granting Husband's motion to enforce the agreement's financial provisions.

## MEDIATED SETTLEMENT AGREEMENT: CUSTODY AND VISTATION PROVISIONS

Husband argues the family court erred by failing to approve the parties' agreement related to custody and visitation. He contends the family court improperly shifted the burden of proof to him. Additionally, Husband argues all parties, including the GAL, have previously stated that the agreement was in the children's best interest.

Finally, he asserts that the parties' ongoing disagreements all stem from Wife repudiating the parties' settlement and delaying its enforcement.

"The welfare of the child and what is in his/her best interest is the primary, paramount and controlling consideration of the court in all child custody controversies." *Cook v. Cobb*, 271 S.C. 136, 140, 245 S.E.2d 612, 614 (1978). "The rule is that contracts between spouses as to the custody of children will be recognized unless the welfare of the children requires a different disposition." *Powell v. Powell*, 256 S.C. 111, 116, 181 S.E.2d 13, 16 (1971) (quoting *Ford v. Ford*, 242 S.C. 344, 354, 130 S.E.2d 916, 922 (1963)).

We believe the family court did not err in denying Husband's motion to enforce the settlement's custody and visitation provisions. The settlement was procedurally fair on these issues for the same reason it was procedurally fair financially: both parties negotiated the agreement with the assistance of counsel. The custody and visitation provisions were substantively fair because the arrangement provided Husband and Wife would share custody of HGS on a week-to-week basis, encourage a relationship with both parents, and refrain from making disparaging comments about the other parent. Furthermore, the fact that both parties testified they believed the custody arrangement was fair at the time they entered into the agreement supports a finding of substantive fairness.

Even so, we share the family court's concern with the negative environment resulting from this divorce, especially after Wife repudiated the settlement agreement. *See id.* (quoting *Ford*, 242 S.C. at 354, 130 S.E.2d at 922) (stating custody agreements will be recognized unless the children's welfare requires a different result). The fact that Wife was the party who repudiated the agreement is worth mentioning, but the issue is nevertheless controlled by the best interest of the child in question. The family court believed the negativity between the parents might constitute a change of circumstances from the time the parties executed the agreement. Most importantly, the family court believed it did not have sufficient information to find it was still in the youngest daughter's best interest to enforce the settlement. We agree.

Based on the GAL report, two of the children, AMS and LES—both of whom were minors when the case was filed—have subsequently moved out of their parents' homes. AMS's relationship with Husband apparently deteriorated to the point that Husband kicked his son out of the home. There does not appear to be much information in the GAL report about LES; however, it appears she moved out of the house by the time she turned eighteen. Although both of these children are

now over the age of eighteen, their reactions to their parent's behavior highlight the concerns we and the family court have with the custody of HGS, the remaining minor child.

The family court's decision seems to be in line with the testimony the GAL gave at the hearing. We read that testimony as making two points. First, the GAL had significant concerns about Husband's inability to forgive Wife for committing adultery. This concern was long-standing. An e-mail from before mediation suggested the GAL's recommendation at that time would have been for the minor children to be primarily placed with Wife. In the email, the GAL wrote that if the parties were not able to reach a settlement, he would likely have to file a motion for a second temporary hearing to alter the existing arrangement of primary placement with Husband and visitation with Wife.

The GAL's second concern was that the root problem—the lingering animosity—would make week-to-week custody unworkable. The GAL explained agreements were generally in children's best interest because the nature of an agreement is that the parties have expressed willingness to abide by the agreement's terms. Here, however, both parents were not asking for the agreement's enforcement and the GAL perceived the hostility between the parents had not been resolved. The GAL directly stated he was concerned that Husband's animosity toward Wife had affected two of the parties' children and was starting to affect their youngest daughter.

Given the parties' deteriorating relationship and the potential effect on HGS, we agree with the family court's decision declining to enforce the settlement's custody and visitation provisions until after the court could conduct a more extensive hearing. *See Cook*, 271 S.C. at 140, 245 S.E.2d at 614 ("The welfare of the child and what is in his/her best interest is the primary, paramount and controlling consideration of the court in all child custody controversies.").

**TEMPORARY ORDER PAYMENTS**

Husband argues the family court erred in how it applied the recurring $2,500 payments he made between the 2015 temporary order and the 2017 order approving the settlement. The family court gave Husband credit for all of these payments and treated them as being made pursuant to the first two years of the settlement's payment schedule. Husband contends the family court should have first deducted these payments from the $47,000 lump sum he was required to pay Wife after the settlement's approval.

"The construction of a separation agreement is a matter of contract law." *Keefer v. Keefer*, 394 S.C. 329, 333, 715 S.E.2d 379, 381 (Ct. App. 2011). "The court's only function with an agreement that is clear and capable of legal construction is to interpret its lawful meaning and the intention of the parties as found within the agreement and to give them effect." *Id.* (quoting *Nicholson v. Nicholson*, 378 S.C. 523, 533, 663 S.E.2d 74, 79 (Ct. App. 2008)).

"If the agreement is ambiguous, the court should seek to determine the parties' intent." *Id.* "An ambiguous contract is one capable of being understood in more ways than one, an agreement obscure in meaning through indefiniteness of expression, or having a double meaning." *Id.* (quoting *Nicholson*, 378 S.C. at 533, 663 S.E.2d at 79). "If a marital agreement is unambiguous, the court must enforce it according to its terms." *Id.* at 333, 715 S.E.2d at 382.

"Whether a contract is ambiguous is to be determined from the entire contract and not from isolated portions of the contract." *Farr v. Duke Power Co.*, 265 S.C. 356, 362, 218 S.E.2d 431, 433 (1975). Silence alone does not create an ambiguity. *See Jordan v. Sec. Grp., Inc.*, 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993). "However, where an agreement is silent as to a particular matter and because of the nature and character of the transaction an ambiguity arises, parol evidence may be admitted in order to supply a deficiency in the language of the contract." *Lindsay v. Lindsay*, 328 S.C. 329, 343, 491 S.E.2d 583, 591 (Ct. App. 1997) (quoting *Ebert v. Ebert*, 320 S.C. 331, 339, 465 S.E.2d 121, 126 (Ct. App. 1995)).

We find the agreement is not ambiguous. *See Keefer*, 394 S.C. at 333, 715 S.E.2d at 382 ("If a marital agreement is unambiguous, the court must enforce it according to its terms."). The agreement divides the parties' assets, requires Husband to pay Wife a $47,000 lump sum, and sets a payment schedule for the remaining funds due to Wife. The agreement is silent as to any payments made under the temporary order. *See Jordan*, 311 S.C. at 230, 428 S.E.2d at 707 (holding silence alone does not create an ambiguity).

The family court gave full effect to the settlement and to the temporary order's language that Husband's periodic payments under the temporary order would ultimately be credited towards Wife's share of the marital estate. We do not see a reason to reverse or modify that decision. If we were to agree with Husband and find that these payments—a total of $57,500—should first reduce the $47,000 lump sum with the remaining $10,500 being credited against the settlement's payment schedule, we would then face the question of whether those payments

should be credited to the beginning of the payment schedule or the end; a provision on which the settlement is completely silent. The family court's decision gives Husband full credit for all of the money he has paid and ensures Wife will receive all of the money she is owed. This calls to mind a principle the court has called "an overriding" rule of procedure that says "whatever doesn't make any difference, doesn't matter." *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987).

## ATTORNEY'S FEES

Both Husband and Wife argue they were entitled to an award of attorney's fees.

"[A]ttorney's fees may be assessed against a party in an action brought in the family court." *Patel v. Patel*, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). "In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). The reasonableness of attorney's fees should be determined by the following factors: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). "[O]n appeal, an award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor." *Nelson v. Nelson*, 428 S.C. 152, 187, 833 S.E.2d 432, 450 (Ct. App. 2019) (alteration in original) (quoting *Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997)).

We find that the family court did not err in declining to award attorney's fees and the *E.D.M.* factors do not weigh in favor of awarding fees to either party. Both parties have the ability to pay their own fees. Husband incurred $33,825 in attorney's fees and costs. Husband also has substantial net worth and his rental properties generate over $200,000 in gross rents, although Husband claims a large portion of his rental income is used to pay the debts encumbering the properties and to make payments to Wife under the settlement agreement. Wife incurred $21,617 in attorney's fees and costs. Wife will also receive approximately $767,000 in cash over the course of the payment schedule and $36,000 in retirement assets and brokerage accounts under the settlement agreement.

Furthermore, she has been receiving monthly payments under the agreement in addition to the income she receives from her business.

Additionally, both parties received beneficial results. Husband received a favorable result because he was able to enforce the financial provisions of the settlement agreement. Wife received a favorable result because the family court declined to enforce the settlement's custody and visitation provisions. We note the further deterioration of Husband and Wife's relationship that rendered the custody arrangement in the agreement untenable was likely precipitated by Wife's repudiation of the settlement agreement. However, at this stage it appears neither party is without blame for allowing the situation to deteriorate.

Both parties are in a stable financial condition. Husband admits he is in stable financial condition in his brief. Although Wife claims she is not in a stable financial position, the large lump sum payment and the monthly payments she receives under the settlement agreement, in addition to the income from her business, appear to provide her with financial stability. Finally, we find that paying attorney's fees and costs for each party, while substantial, will not have a large impact on the parties' standard of living given their respective net worth and available assets. Based on the foregoing, we find the *E.D.M.* factors do not weigh in favor of awarding attorney's fees to either party at the present time. The family court of course remains able to consider attorney's fees at this case's conclusion.

**CONCLUSION**

Based on the foregoing, the family court's order is

**AFFIRMED.**[1]

**LOCKEMY, C.J., and GEATHERS and HEWITT, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.