**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Timothy Jason Ghormley, Appellant,

v.

Mariann Ghormley, Respondent.

Appellate Case No. 2024-001346

---

Appeal from Charleston County
Anne Gue Jones, Family Court Judge

---

Unpublished Opinion No. 2026-UP-108
Heard December 11, 2025 – Filed March 4, 2026

---

**REVERSED AND REMANDED**

---

Leslie Therese Sarji, of Charleston, for Appellant.

Chris Paton, of Chris Paton LLC, of Charleston, and Margaret Fanning Horn, of Horn Law Firm, LLC, of Mount Pleasant, both for Respondent.

---

**PER CURIAM:** Timothy Jason Ghormley (Father) appeals the family court's order granting Mariann Ghormley's (Mother) motion to enforce a mediated settlement agreement (MSA) because he argues Mother repudiated the MSA by continuing to litigate matters addressed in the MSA, seeking to renegotiate the MSA, and asking for relief inconsistent with the MSA. Father also argues the MSA was unenforceable

under Rule 43(k), SCRCP, and was neither procedurally nor substantively fair. Father further asserts the MSA should not have been enforced based on the equitable principles of unclean hands and judicial estoppel. Finally, Father challenges the family court's award of attorney's fees to Mother. We reverse and remand for proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

Father and Mother married in 1999 and had six children over the course of their marriage.[1] During most of their marriage, Father was a member of the armed services and was deployed five times. Mother stayed home with the children and homeschooled them during Father's active military service.

According to Father, in May 2022, Mother informed him she wanted a divorce. Father was suspicious that Mother wanted to end the marriage due to an extramarital affair. Mother denied an affair. In June 2022, Mother and Father participated in two virtual mediation sessions in the hopes of settling their marital estate and establishing custody before filing for divorce; neither party elected to be represented by counsel. The mediator was a South Carolina licensed attorney. Mother and Father signed the resulting MSA on June 2, 2022. The MSA addressed the following: (1) physical and legal custody of the children; (2) payment of alimony and child support to Mother; (3) division of marital debts; and (4) distribution of properties, vehicles, financial accounts, and Father's retirement accounts.

Six weeks later, on July 15, 2022, Father moved out of the marital home.[2] In December 2022, Mother and Father discussed changes Mother wished to make to the MSA, and Mother contacted the mediator about the mediator's willingness to mediate with the parties again. However, no additional mediation sessions ever occurred, and no changes were made to the MSA.

On June 15, 2023, Father filed for divorce, alleging Mother had committed adultery. In his complaint, Father did not ask for relief in accordance with the MSA or for approval of the MSA.

---

[1] Two of the children have reached the age of majority.

[2] The record does not reflect that the parties resumed their marital relationship in any capacity during this period.

Mother answered and counterclaimed, seeking a divorce on the ground of a year's continuous separation and asking the family court to approve the MSA "in large part: except for the amount of alimony and child support paid to Mother." Mother also asked the court to grant her final authority on matters concerning the children's education, health, welfare, and religious training. Mother alleged that during the separation, the parties conducted themselves in accordance with the custody and asset division provisions of the MSA (i.e., real estate, vehicles, boats, and financial accounts), but Father failed to abide by the financial obligations of the MSA (i.e., child support, equitable division, balancing payments, and alimony). Mother acknowledged that she raised "some financial questions" after the MSA was signed but insisted that she never "repudiated, sought to repudiate, or otherwise conducted" herself in a manner inconsistent with the MSA.

In September 2023, the parties attended a seven-and-a-half-hour mediation to settle the marital estate and establish custody, alimony, and child support. Mediation failed, and the parties only resolved paternity of the children, which had never been contested. In November 2023, Mother filed a request for a hearing, seeking a four-day trial to settle child custody, division of assets, child support, and spousal support. Over the following months, the parties engaged in discovery, issued interrogatories, and submitted their financial declarations.

Finally, in April 2024—almost two years after the MSA was signed and ten months after the divorce action commenced—Mother moved for the family court to approve the MSA.[3] At the hearing on the motion, the parties agreed to present affidavits in lieu of testimony. The guardian ad litem (GAL) stated in her affidavit that the parties had requested she stop and start her investigation several times while they attempted to resolve their issues. The GAL determined that the children appeared to be doing well despite the parents' divorce but that the issue of legal custody needed to be resolved.

Following a hearing on the motion, the family court found that the MSA was a product of a meeting of the minds and was enforceable as a contract between the parties. The family court acknowledged the parties had discussed modifying the

---

[3] The title of the motion was to *enforce* the MSA. Despite the title of the motion, the parties were clearly aware the MSA had yet to be approved by the family court and conceded at the hearing that they were arguing about whether the MSA should be approved. The family court also understood approval of the MSA was at issue, even titling its order as approving the MSA. Thus, the motion was properly considered as a motion to approve the MSA.

MSA, but Mother nonetheless sought in her counterclaim "to have this [c]ourt approve" the MSA. The family court also found that the MSA was signed before Mother's alleged adultery, and thus, Mother could not be barred from alimony under section 20-3-130(A).[4] Finally, the family court awarded Mother $3,730 in attorney's fees, using Father's imputed monthly income of $18,000. Father filed a motion to reconsider, which the family court denied.

## LAW AND ANALYSIS

Father argues that Mother withdrew her assent to the MSA through her conduct because she continued to litigate matters addressed by the MSA, sought to renegotiate the agreement, and asked for relief inconsistent with the MSA. We agree.

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Crossland v. Crossland*, 408 S.C. 443, 451, 759 S.E.2d 419, 423 (2014); *see also*, *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018). "Thus, this [c]ourt has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence; however, this broad scope of review does not require the [c]ourt to disregard the findings of the family court, which is in a superior position to make credibility determinations." *Id.*

Marital settlement agreements are a matter of contract law. *Davis v. Davis*, 372 S.C. 64, 75, 641 S.E.2d 446, 451 (Ct. App. 2006) ("In South Carolina, the construction of a separation agreement is a matter of contract law."); *see Nichols Holding, LLC v. Divine Cap. Grp.*, 416 S.C. 327, 335, 785 S.E.2d 613, 617 (Ct. App. 2016) ("[S]ettlement agreements are viewed as contracts." (quoting *Pee Dee Stores,*

---

[4] This section provides,

> No alimony may be awarded a spouse who commits adultery before the earliest of these two events: (1) the formal signing of a written property or marital settlement agreement or (2) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties.

S.C Code Ann. § 20-3-130(A) (2014). This finding was not appealed and is, thus, the law of the case. *See Ex parte Morris*, 367 S.C. 56, 65, 624 S.E.2d 649, 653–54 (2006) ("[An] unappealed ruling is the law of the case . . . .").

*Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009))). "It is well settled in South Carolina that in order for there to be a binding contract between parties, there must be a mutual manifestation of assent to the terms." *Edens v. Laurel Hill, Inc.*, 271 S.C. 360, 364, 247 S.E.2d 434, 436 (1978); *see also* 17 C.J.S. *Contracts* § 49 (2025) ("A manifestation of mutual assent is an essential prerequisite to the creation of a contract."). Mutual assent must be as to *all* terms of the contract. *Edens*, 271 S.C. at 364, 247 S.E.2d at 436 ("[T]he assent must be as to all of the terms of the contract."); *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989) ("South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement.").

Parties are not bound by a marital settlement agreement until the family court approves the agreement. *See Keefer v. Keefer*, 394 S.C. 329, 334, 715 S.E.2d 379, 382 (Ct. App. 2011) ("By merging an agreement into a divorce decree, the court transforms it from a contract between the parties into a decree of the court. 'With the court's approval, the terms become a part of the decree and are binding on the parties and the court.'" (quoting *Emery v. Smith*, 361 S.C. 207, 214, 603 S.E.2d 598, 601 (Ct. App. 2004))). "Until a party is bound [by an agreement], she is entitled to withdraw her assent." *Farnsworth v. Davis Heating & Air Conditioning, Inc.*, 367 S.C. 634, 637, 627 S.E.2d 724, 725 (2006). "Such withdrawal may be evidenced by conduct, as well as by words." *Masonic Temple v. Ebert*, 199 S.C. 5, 18 S.E.2d 584, 589 (1942).

We hold the family court erred in approving the MSA because Mother withdrew her assent well before she sought approval. Here, Mother's conduct reflects a withdrawal of assent. First, even before the divorce proceedings commenced, Mother sought to renegotiate the MSA, going so far as to reach out to the mediator to see if he would be willing to conduct additional mediation sessions with the parties. Next, in her answer and counterclaim, Mother requested only partial approval of the MSA, asking the family court to approve the agreement except for the alimony and child support provisions; she also sought primary legal custody despite the MSA granting the parties joint legal custody. Further, Mother did not seek approval of the MSA by motion for nearly a year after divorce proceedings began and not until after participating in a seven-and-a-half-hour mediation. Mother also engaged in extensive discovery and even requested a four-day trial to resolve many of the issues in the MSA almost six months before filing her motion to approve. Ultimately, Mother has consistently disclaimed the MSA's provisions concerning legal custody, child support, and alimony and sought to renegotiate other provisions.

There is no dispute here that Father withdrew his assent to the MSA before the family court approved it. Mother's conduct and disclaimer of certain provisions reflect that she no longer assented to all terms of the MSA, which was required for an enforceable contract to exist. *See Edens*, 271 S.C. at 364, 247 S.E.2d at 436 ("[A]ssent must be as to *all* of the terms of the contract." (emphasis added)). Accordingly, we reverse the family court's approval of the MSA because both parties withdrew their assent before they were bound by the MSA.

Further, because we reverse the finding upon which the award was made, we also reverse the award of attorney's fees. *See Ex parte Lipscomb*, 398 S.C. 463, 471, 730 S.E.2d 320, 324 (Ct. App. 2012) ("Because the award of attorney's fees was predicated on the circuit court's finding of contempt, we reverse the award of attorney's fees.").

For these reasons, the family court's order is

**REVERSED AND REMANDED.**

**KONDUROS, GEATHERS, AND VINSON, JJ., concur.**